George D. HURST, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4686.

Supreme Court of Wyoming.

April 29, 1977.

Kermit C. Brown of MacPherson & Golden, Rawlins, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Cheyenne, and Barbara Lucas, Prosecution Asst., University of Wyoming Law School, Laramie, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

GUTHRIE, Chief Justice.

Appellant was charged and tried before the district court in Carbon County, Wyoming, convicted on the charge of aggravated assault and battery with a dangerous or deadly weapon and sentenced to from four to six years imprisonment, the sentence to commence as of September 14, 1974. The issues here are:

1. Was defendant deprived of his right to a speedy trial?
2. Was defendant denied his right to counsel at his preliminary hearing and arraignment?
3. Did the district court err in denying defendant's motion for judgment of acquittal?
4. Did defendant's conviction amount to double jeopardy?

We answer all questions negatively.

On September 14, 1974, while an inmate at the Wyoming State Penitentiary, defendant refused to carry out assigned work and was returned to his cell by Carl Cole, a guard. As Cole went to close defendant's cell door, defendant struck Cole and knocked him to the floor. Other guards responded to the commotion and discovered Cole with blood on his chest. Upon reaching the prison dispensary, Cole realized that he had been stabbed. Shortly thereafter a guard returned to defendant's cell and discovered there a large laundry pin which had blood on its tip. No other inmates were seen near defendant's cell at the time of the alleged incident. Defendant appeared before the prison disciplinary review board, which "flattened" defendant's good time, moving back his release time some four years. Additionally, a criminal complaint and warrant were issued on September 17, and defendant was brought before the justice of the peace on September 19. After intervening events, which will be discussed in the course of this opinion, defendant had a preliminary hearing without counsel on November 21 and was bound over to district court for trial. On December 13 defendant appeared before the district court for arraignment but was given additional time to find counsel. After other intervening events, discussed hereafter, defendant was arraigned without counsel on August 14, 1975. Counsel having been appointed thereafter, defendant filed a motion on November 19, 1975, alleging the grounds urged here on appeal. The motion was heard and overruled by the court on the day of the trial, November 24, 1975.

Appellant contends the delay in bringing him to trial was unnecessary and prejudicial, thus violating his constitutional right to a speedy trial. While appellant's brief does set out certain general principles with which no one can quarrel, the case of

*Stuebgen v. State*, Wyo., 548 P.2d 870, contains the complete answer to defendant's contentions. In that case we adopted the rule, 548 P.2d at 873, as embodied in *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183, in a per curiam opinion, and which was repeated from *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, which sets out four factors which must be considered in determining whether a speedy trial has been granted. These are length of delay; reason for delay; defendant's assertion of his right; and prejudice to defendant. These are to be considered together, along with any other relevant circumstances, in a determination of this question. As that opinion states, this involves "a difficult and sensitive balancing process," which clearly demonstrates that each case must be considered upon its own peculiar facts. In this case there was a delay of approximately 14 months from the date of the crime, and the case was tried approximately one year after the preliminary hearing. The reason for the delay is implicit in the record.

Appellant's adamant refusal to cooperate with or accept three different appointed attorneys delayed the preliminary hearing approximately two months, and at his appearance for the purpose of arraignment before the district court on December 13, 1974, after considerable colloquy, defendant advised the trial judge he had no lawyer and was not ready to plead. In response to a question whether he wanted a lawyer, defendant replied in the affirmative but also advised the judge he was going to attempt to secure a lawyer through some civil liberties group. The judge observed that he wished to bring this matter to trial and asked him to obtain an attorney, to which defendant agreed. At that time the judge suggested a deadline and wanted to be advised of such attorney's employment before the first of the year. Defendant demurred, not being sure he could secure an answer because of the holiday season. At that time the trial judge asked him to get a letter advising the court who would represent him.[1] Defendant replied, "I will certainly keep you informed." He further agreed that the arraignment should be set when an attorney was obtained. Defendant did nothing until July 23, when we discover a motion filed pro se, requesting "a personal appearance in connection with the charge." In apparent response thereto, on August 11, the presiding Judge set the arraignment for August 14. At this appearance defendant again advised the trial judge he had no attorney and that the arraignment was illegal and refused to plead. The court advised him that a new attorney was coming to the community and that the trial would be set for either October or November, and in face of the record defendant insisted that a time limit of two weeks had been set for arraignment after the December 13 hearing. The then presiding judge showed him that the record reflected there had been no two weeks' deadline. Defendant charged this record was fraudulent.

Significantly, although defendant was most vocal, he did not suggest that he had ever advised the trial judge, after the first attempted arraignment, of his retention of an attorney as he had agreed to do; nor was there any request for an appointment of another attorney. Because of his refusal to plead, the judge ordered the entry of a not guilty plea. On September 13 the court appointed Kermit Brown as counsel for the defendant, and the trial was set for November 24. Although it is not an essential element that there be a demand on the part of the defendant for a speedy trial, nor is it necessary affirmatively to show prejudice as a result of such delay, it is eminently proper in determining this question to consider these factors and the reasons therefor. There is obviously no demand for a trial here, but defendant instead rested quietly from December 13 until July 23, and then attempted to assert a false

1. The trial judge who conducted the original arraignment proceedings retired on January 1, 1975.

premise that the arraignment was to be had by January 1, 1975. The prejudice asserted by him in his affidavit attached to the motion to dismiss is based upon his confinement and segregation, wherein he recites he was unable to interview witnesses and gather all essential evidence. That appears to be a specious claim because the record demonstrates that all those persons who were present at the time of the commission of the crime were available at the trial. See *State v. Ivory*, 27 Or.App. 685, 557 P.2d 698, 701. Although the delay here (14 months) is factually similar to the delay in Stuebgen (18 months), the reason for the delay in Stuebgen was in no manner occasioned by any action of the defendant. Here, the record clearly demonstrates that the delay was occasioned by defendant's dilatory and obstructive tactics.

In considering all the factors which must be reviewed in determining whether defendant has been deprived of a speedy trial, we must hold that this factual situation does not justify a holding that defendant was deprived of a speedy trial.

Appellant's next claimed basis for reversal is that since the justice of the peace held a preliminary hearing binding him over and that the district court arraigned him without counsel, the trial court had no jurisdiction.

■ The preliminary hearing "is not a 'critical stage' of the State's criminal process," and a defendant is as much entitled to counsel as he would be at trial, *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387. Also see *Thomas v. Justice Court of Washakie County*, Wyo., 538 P.2d 42, 47. However, as will be later discussed, the present case demonstrates that such failure to provide counsel does not in all cases entitle a defendant to a release or a new trial. We find the case of *United States v. White*, 8 Cir., 529 F.2d 1390, 1393, contains a most persuasive and applicable statement under this factual situation:

> "Of course, the right to counsel is a shield, not a sword. A defendant has no right to manipulate his right for the purpose of delaying and disrupting the trial.

[Citing *United States v. Sperling*, 506 F.2d 1323, 1337 n.19 (2d Cir. 1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975).]"

Also see *United States v. Morrissey*, 2 Cir., 461 F.2d 666, 669. This court has further recognized in *Ash v. State*, Wyo., 555 P.2d 221, 224, that the "right to counsel may not be used to play 'a cat and mouse game with the court,'" quoting from *Leino v. United States*, 10 Cir., 338 F.2d 154, 156. This principle is clearly applicable herein and the record clearly demonstrates a studied course of conduct on the part of defendant to delay and disrupt this entire proceeding.

■ Prior to the preliminary hearing three different attorneys were appointed to represent this defendant, being T. Michael Golden, Gerald Gallivan, and C. L. Bates, all of whom this court knows from personal knowledge to be competent and dedicated attorneys who could ably handle any criminal defense. Defendant discharged Mr. Golden for his refusal to file certain proceedings. Upon his discharge, Mr. Bates was appointed, and because of some express dissatisfaction he apparently withdrew and Mr. Gallivan was appointed, who after consulting with defendant asked permission to withdraw since he deemed himself unable to represent defendant due to his insistence on dictating the manner in which his defense should be presented. Mr. Bates appeared again with defendant before the justice of the peace on November 21, and Hurst expressed his dissatisfaction with Bates. After Bates filed a motion seeking to withdraw on the basis of items set forth in an affidavit, the court apparently allowed him to do so. We have examined the affidavit, and aside from Bates' conclusion that there was "a conflict of interest," the factual situation set out in his affidavit demonstrates defendant's complete determination to control all the proceedings and to assert such frivolous defenses as would degrade this entire proceeding. This writer is prompted at this point to observe that although it is a recognized ethical duty of appointed counsel to appear for and represent a criminal defendant to the utmost

of his ability, it should be further observed that there is no ethical duty which any defendant can impose upon such appointed attorney to prostitute himself and his profession, or to degrade the entire judicial process by presenting and insisting upon utterly inapplicable rules or untenable positions. See ABA Code of Professional Responsibility, Canon 7, DR 7–102(A)(2).

■ After Bates' discharge, and on November 27, defendant was again brought before the justice of the peace, who advised him of the court's inability to secure for appointment any other competent counsel and proceeded to a preliminary hearing, required defendant to appear pro se, and bound him over to the district court.

From this record we cannot find any legal or proper basis for concluding that Golden, Gallivan, or Bates would not have properly represented the defendant. As in *Miller v. State*, Wyo., 560 P.2d 739, we find here a defendant, who although dissatisfied with appointed attorneys, in no manner demonstrates any good or legitimate reason for the discharge of any one of these three. Rather, the record demonstrates a determination not to cooperate with them and to keep himself in entire charge of his defense. This record also clearly demonstrates a studied course of obstruction on the part of the defendant and his refusal to accept the help of three competent counsel. He then objected to proceeding with the preliminary hearing without an attorney. He seems to feel he can claim the best of both worlds, consistently refusing to accept an attorney and yet demanding the services of one. We have here a situation where a defendant rejects competent, court-appointed counsel, but refuses to waive assistance of some counsel. As suggested by this court in *Miller*, a defendant may not unreasonably reject the counsel appointed to represent him.

The case of *State v. Jones*, 113 Ariz. 567, 558 P.2d 912, bears a marked similarity to the factual situation in this case, and at 915–916, of 558 P.2d, we find the following completely applicable:

" * * * In the instant case, the defendant was rejecting the counsel appointed by the court, the third attorney so appointed to represent him. It does not appear he would have signed any waiver even if he had been asked to do so. A defendant may not unreasonably reject the counsel offered to represent him and then, on appeal, complain he was denied the assistance of counsel. * * *"

Nor can we overlook the fact that between the date of appointment of counsel and November 19, when the motion to dismiss was filed, there was no motion or request made that the court remand this matter so that a preliminary hearing might be held.

■ If we were to hold that this could be raised, there is an equally substantial basis upon which relief should be denied under the direct holding of *Coleman v. Alabama*, supra, 90 S.Ct. at 2004, which case sets out that the test for disposal should be a determination of whether the denial of counsel at the preliminary hearing was harmless error, under the test of *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065, rehearing denied 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241, which test is that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." A careful examination of this record reveals overwhelming evidence of defendant's guilt, from which we cannot believe that any reasonable man would have arrived at a different conclusion.

■ From what has been set out in the preceding paragraph, a necessary disposition has been indicated of defendant's third claim that his motion for acquittal should be granted and that the State at most proved a case of simple assault and battery. We assume that the contention is asserted and argued at the insistence of defendant. Cole testified he was struck by defendant and knocked down, and that he did not see anything in defendant's hand or feel anything but the blow. Martinez heard Cole yell and ran immediately to the scene, where he saw blood all over Cole's front. Cole did suffer a stab wound, and a

search of defendant's cell after this incident revealed a laundry pin with blood on the point. Defendant's brief asserts that "the State's failure to produce anyone who could testify that the defendant stabbed Officer Cole creates a reasonable doubt whether defendant was armed with a dangerous or deadly weapon." This asserted theory would apparently require the direct statement of a witness that he saw this instrument in the hand of the defendant, and flies directly in the face of a most firmly established rule in this state, that a conviction of a crime may be had upon circumstantial evidence, *Dryden v. State*, Wyo., 535 P.2d 483, 496, and numerous authorities cited therein. This contention, if taken at face value, would deny the fact finder the right to rely upon inferences. Reasonable inferences may always be relied upon to sustain a conviction, and in our appellate consideration we must indulge any favorable inferences therefrom in favor of the court's finding, *Evanson v. State*, Wyo., 546 P.2d 412, 418.

■ Finally, defendant contends that his conviction amounted to double jeopardy since he had previously been punished administratively by loss of good time. This contention was rejected in *Hamby v. State*, Wyo., 559 P.2d 1388, and we reject it here.

Affirmed.

ROSE, Justice, specially concurring, with whom McCLINTOCK, Justice, joins.

The majority opinion refers to the majority holding in *Ash v. State*, Wyo., 555 P.2d 221, 224, where we said, quoting from *Leino v. United States*, 10 Cir., 338 F.2d 154, 156:

"'* * * The right to counsel may not be used to play a "cat and mouse game with the court." . . .'"

I concur in the majority opinion with the observation that I see no similarity whatever between the facts of the instant matter and those revealed in *Ash v. State*. In *Ash*, the defendant was sent to trial against his wishes with an unprepared attorney. In this case, the defendant had an opportunity to be represented by counsel at every stage of the trial—which opportunity he purposely and methodically rejected in an apparent effort to infuse reversible error into the proceedings. I can and do continue to reject the majority opinion in *Ash*, supra, while willingly joining the majority opinion here.