James A. CHERNIWCHAN, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

James W. HARRISON, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

Nos. 5024, 5025.

Supreme Court of Wyoming.

May 3, 1979.

Steve D. Noecker, Rawlins, for appellants.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, and Leonard D. Munker, Senior Asst. Atty. Gen., Cheyenne, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

ROSE, Justice.

Defendants-appellants, James A. Cherniwchan and James W. Harrison, were charged with, tried for, and found guilty of violating § 6–8–305, W.S.1977, pertaining to escape from the Wyoming State Penitentiary.

Eights days after their escape, namely on November 1, 1977, the defendants were ar-

rested and returned to the penitentiary; and ten days later, a complaint and warrant issued, charging them with the crime of escape. The warrant was returned eight days later, on November 18, 1977.

On February 15, 1978, 107 days after their arrest, the defendants were, for the first time, brought before the magistrate. At this juncture, the public defender's office was notified.

On April 11, 1978, 162 days after their arrest, a preliminary hearing was held and the defendants were bound over to district court. The information was filed on April 14, 1978, arraignment had on April 19, 1978, and trial was held on May 22, 1978, 203 days after arrest.

The defendants charge the following errors:

"I. Rule 5 of the Wyoming Rules of Criminal Procedure was violated by an unnecessary delay of 107 days between the defendants' arrest and their first appearance before a magistrate, requiring the dismissal and vacation of all proceedings had thereon.

"II. Defendants' constitutional rights to due process and a speedy trial were violated as guaranteed to them under the 5th, 6th and 14th amendments to the United States Constitution and Article 1, Sections 6 and 10 of the Wyoming Constitution.

"III. Section 7–9.3 of the Wyoming Statutes (Cum.Supp.1975), (Now 7–1–111, W.S.1977), was violated by the failure of law enforcement officers, at the commencement of the defendants' detention, to inform them of their right to appointed counsel and to notify the justice of the peace that they were not represented by counsel, requiring the dismissal and vacation of all subsequent proceedings had thereon."

We will affirm the trial court's judgment entered upon the jury's verdict of guilty,

---

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to Article 5, Section 5, Wyoming Constitution, and Section 5–1–106(f), W.S.1977, by order of this court entered on January 1, 1979.

and its order refusing dismissal and vacation of the proceedings due to unnecessary delay.

## ERROR I (supra)

Rule 5 of the Wyoming Rules of Criminal Procedure provides:

"(a) *Appearance Before the Commissioner.* An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person *without unnecessary delay* before the nearest available commissioner. When a person arrested without a warrant is brought before a commissioner, a complaint shall be filed forthwith.

"(b) *Statement by the Commissioner.* The commissioner shall inform the defendant of the complaint against him and of any affidavit filed therewith, of his right to retain counsel, of his right to request the assignment of counsel if he is unable to obtain counsel, and of his right to consult counsel and to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him." [Emphasis supplied]

The questions for our decision are: (1) Was Rule 5 violated by an "unnecessary delay" between the arrest and the appearance before the magistrate? and (2) If the rule was violated, what is the effect of its violation?

*Rule 5 was violated.*

■ Rule 5(a) of the Wyoming Rules of Criminal Procedure requires an arrested person be taken "without unnecessary de-

lay" before a court commissioner. The term "without unnecessary delay" is not subject to precise definition, nor does it call for mechanical obedience. Application of the limits of the term is dependent upon both the facts and circumstances of the particular case, viewed in light of the purpose of the rule. *Richmond v. State,* Wyo., 554 P.2d 1217, 1228 (1976); *Raigosa v. State,* Wyo., 562 P.2d 1009, 1015 (1977); and *Sciberras v. United States,* 10 Cir., 380 F.2d 732, 734 (1967).

■ The rule was violated in that the 107 days after arrest before the defendants were taken before a magistrate, constitutes not only an unreasonable delay but an unconscionably unreasonable delay—by any and all standards. Both the district court and the county attorney conceded the fact of unreasonable delay at the oral arguments on the defendants' motion to dismiss.

*What is the effect of a Rule 5 violation under the facts of this case?*

■ Rule 5 is not unlike its counterpart in the Federal Rules of Criminal Procedure, the origin of which stems from the abuse described in *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); and *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). The purpose of the rule is to prevent officers from illegally obtaining statements during a defendant's initial confinement, but prior to appearance before a magistrate, 5 Am.Jur.2d, Arrest, § 75, p. 752 (1962), which is to say that its purpose is to prevent the abuses described in *McNabb v. United States,* supra, and *Mallory v. United States,* supra.[1] Judge Murrah, writing for

---

1. In *Mallory v. United States,* supra, the United States Supreme Court said:

"In *McNabb v. United States,* 318 U.S. 332, 343–344, 63 S.Ct. 608, 614, 87 L.Ed. 819, we spelled out the important reasons of policy behind this body of legislation:

" 'The purpose of this impressively pervasive requirement of criminal procedure is plain. * * * The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into dif-

ferent parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication. Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. For this procedural requirement checks re-

the Tenth Circuit in *Blood v. Hunter*, 10 Cir., 150 F.2d 640, 641 (1945), stated:

"The proper application of the *McNabb* doctrine was demonstrated in *United States v. Mitchell*, 322 U.S. 65, 64 S.Ct. 896, 897, 88 L.Ed. 1140, in which it was emphasized that the vice at which the *McNabb* case was directed was 'inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure,' and that a conviction thus obtained could not stand. But the mere fact that the accused was illegally detained in violation of 18 U.S.C.A. § 595, does not of itself void a conviction based upon competent evidence. . . ."

█ It is admitted that in the case at Bar there was no evidence to be excluded, but defendants urge that because of the long delay, the lack of incriminating statements should be of no consequence, and the defendants' remedy, in these circumstances, should be dismissal. The relief accorded a defendant victim of unnecessary delay is the exclusion of evidence obtained during the delay. *Mallory v. United States*, supra, citing to *McNabb*, supra.

In 1 Federal Practice and Procedure, Wright, § 37, pp. 77–78, it is said:

". . . But even under *McNabb-Mallory*, it was not true that violation of the procedure rule itself would require that a conviction be set aside. If defendant never confessed, he could not claim error because of unnecessary delay in taking him before a magistrate. The same rule applies if defendant confessed but his confession was not offered in evidence against him. The exclusion of evidence is the only remedy for violation of the procedural rule. Undue delay in taking the accused before the magistrate does not require dismissal. . . ."

In *United States v. Kenner*, 36 F.R.D. 391, 393 (1965), the court said:

sort to those reprehensible practices known as the "third degree" which, though universally rejected as indefensible, still find their way into use. It aims to avoid all of the evil

". . . In addition, he calls the Court's attention to the fact that he was arrested at 7 P.M. rather than at some more convenient time, taken to dinner instead of being arraigned immediately, denied an early opportunity to telephone counsel or his family, and detained overnight, although a state magistrate was available to set bail. Assuming arguendo that the foregoing infringed defendant's rights, this furnishes no basis for voiding the indictment; his sole remedy is exclusion of evidence tainted by illegal detention. . . ." [Citing to *Mapp v. Ohio*, 367 U.S. 643, 651–653, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)].

We conclude, therefore, that even though the defendants' Rule 5 rights were violated, under the facts of these cases their only relief is the exclusion of evidence tainted by illegal detention and not dismissal.

## ERROR II (supra)

█ We agree defendants have a federal and state constitutional right to a speedy trial. In *Klopfer v. State of North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), the United States Supreme Court held that the Fourteenth Amendment to the United States Constitution made its federal constitutional Sixth Amendment guarantees obligatory on the states. *In Klopfer*, Chief Justice Warren, writing for the court, said:

"We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment. That right has its roots at the very foundation of our English law heritage. Its first articulation in modern jurisprudence appears to have been made in Magna Carta (1215), wherein it was written, 'We will sell to no man, we will not deny or defer to any man either justice or right'; . . ." 386 U.S. at 223, 87 S.Ct. at 993, 18 L.Ed.2d at 8.

implications of secret interrogation of persons accused of crime.'" 354 U.S. at 452–453, 77 S.Ct. at 1358, 1 L.Ed.2d at 1482.

Justice Brennan, concurring in *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), spoke of the evils at which the speedy-trial clause is directed, when he said:

". . . It is intended to spare an accused those penalties and disabilities—incompatible with the presumption of innocence—that may spring from delay in the criminal process. . . ." 398 U.S. at 41, 90 S.Ct. at 1570, 26 L.Ed.2d at 34.

In *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), the court, in interpreting *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), said that an affirmative showing of prejudice was not necessary to prove a denial of the constitutional right to a speedy trial and held:

" 'We regard none of the four factors identified above [length of delay, reason for delay, defendant's assertion of his right, and prejudice to defendant] as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.' " 414 U.S. at 26–27, 94 S.Ct. at 189–190, 38 L.Ed.2d at 185–186.

■ The defendant may be disentitled to speedy-trial safeguards where the delay is all or partly the responsibility of the defendant.[2] In the same vein, it has been held that the defendant's silence or inaction has been construed as an implied abandonment of the defendant's right to speedy trial. *Shafsky v. City of Casper*, Wyo., 487 P.2d 468 (1971); *City of Casper v. Wagner*, Wyo., 284 P.2d 409 (1955), and *United States v. Lustman*, 2 Cir., 258 F.2d 475, 478, cert. den. 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). See, also, the discussion in *Hurst v. State*, Wyo., 563 P.2d 232, 233–234 (1977).[3]

■ The Wyoming Constitution, Article 1, Section 10, similar to the Sixth Amendment of the federal constitution (*State v. Yazzie*, 67 Wyo. 256, 218 P.2d 482 (1950)), guarantees the accused a speedy trial and this guarantee reaches out to protect the rights of convicts. *State v. Keefe*, 17 Wyo. 227, 98 P. 122 (1908). In determining whether a post-accusation delay exists, this court will look to the factors alluded to in *Barker*, supra, namely—length of delay, reason for delay, the defendant's assertion of his right to speedy trial, prejudice to the defendant, together with any other relevant circumstances. *Barker v. Wingo*, supra; *Moore v. Arizona*, supra; *United States v. Hay*, 10 Cir., 527 F.2d 990 (1975); *Cosco v. State*, Wyo., 503 P.2d 1403 (1972); *Stuebgen v. State*, Wyo., 548 P.2d 870 (1976); and *Hurst v. State*, supra.

■ Given the facts of this case, and pitting them against the standards set out above, the following appears: The length of delay between the time when the defendants were arrested and before they were brought before the magistrate was so long as to be unconscionable, and this time-lapse constituted a major part of the time which separated arrest from trial. There can be no blame laid at any doorstep, except that of the county and court officials and officers who were charged with expeditiously processing criminal defendants in the

---

**2.** See *Cosco v. State*, Wyo., 503 P.2d 1403, cert. den. 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693; and *Hurst v. State*, Wyo., 563 P.2d 232; and the cases cited in Footnotes 53–58, The Lagging Right to a Speedy Trial, 51 Va.L.Rev. 1587, 1598–1599 (1965).

**3.** Justice Brennan, in *Dickey v. Florida*, supra, criticizes the abandonment or waiver theory on three grounds—first, the concept rests on a misunderstanding of the effect of delay; second, the waiver theory has been rejected where other fundamental rights are at stake; and third, the implication of waiver from silence or inaction fails to properly assign the burden of insuring a speedy trial.

courts. It would appear, however, that the defendants did not assert their rights to a speedy trial during this long delay between arrest and the time when the defendants were brought before the magistrate.[4]

This leaves us with the question as to whether, when challenged by these standards, there appears such prejudice to the defendants as would warrant our remand for dismissal for failure to protect and guarantee the defendants' constitutional speedy-trial rights.

Courts are not in harmony with respect to what constitutes prejudice in speedy-trial cases where infringement of constitutional rights are urged. In *United States v. Lustman,* supra, the court took the stance that prejudice need not be shown where the defendant is asserting his Sixth Amendment rights. Other courts have said that prejudice may be assumed after lengthy delays. *Hedgepeth v. United States,* 124 U.S.App.D.C. 291, 294, fn. 3, 364 F.2d 684, 687, fn. 3 (1966). Others have insisted that its existence must be shown by the defendant. *United States v. Jackson,* 4 Cir., 369 F.2d 936, 939 (1966). Some courts have placed the burden of proving no prejudice upon the government. *Williams v. United States,* 102 U.S.App.D.C. 51, 53–54, 250 F.2d 19, 21–22 (1957).

Because of the mercurial characteristics attendant upon the proof of prejudice, and because speedy trial is a fundamental right, Justice Brennan, in *Dickey v. Florida,* supra, was forced to conclude:

". . . When the Sixth Amendment right to speedy trial is at stake, it may be equally realistic and necessary to assume the prejudice once the accused shows that he was denied a rapid prosecution."

But, how long must prosecution be delayed before courts are warranted in assuming prejudice? There are as many answers as there are courts that have attempted to answer this question.

We speak at length to these issues out of shock and concern, and in the hope that the Bar of this state will know that we recoil in disbelief from a set of facts which reveals that 107 days after arrest have been permitted to pass before the officials responsible have seen fit to bring the accuseds before a magistrate as required by law—thus delaying their trial accordingly. The question is not whether these defendants have been wronged, but only, are their wrongs prejudicial in a constitutional sense?

The nature of the prejudice that courts speak about when addressing speedy-trial constitutional rights run along these lines: Are the memories of the witnesses dimmed? Is the evidence lost? Have the delays brought about additional costs to the government and the defendant? How does a defendant go about showing the harm sustained by public accusation—public suspicion, the severing of family and social ties, and the personal anxiety? *United States v. Wade,* 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1157 (1967), speaks of speedy-trial denial as denying "potential substantial justice" to the interests protected by the speedy-trial clause. The clause seeks to protect the accused against his inability to defend himself and when this protection breaks down, prejudice becomes identifiable.

In the business of balancing the private rights of the appellants with the public interest, and, therefore, as we consider the

---

4. In *Hurst v. State,* supra, we said:

". . . Although it is not an essential element that there be a demand on the part of the defendant for a speedy trial, nor is it necessary affirmatively to show prejudice as a result of such delay, it is eminently proper in determining this question to consider these factors and the reasons therefor. . . ." 563 P.2d at 234.

See, contra, *Fowler v. Hunter,* 10 Cir., 164 F.2d 668, 670, where the court said:

". . . The accused waives his right to discharge or to a dismissal of the prosecution by reason of the delay in bringing him to trial if he does not make a proper application therefor. The demand for trial must be addressed to the court in which the indictment is pending. Moreover, it has been held that the remedy of a person charged with a crime, who is not accorded a speedy trial, is to demand trial, and if the demand is not met, to apply to the proper appellate court for a writ of mandamus to compel trial."

facts of these cases against the backdrop which is composed of the four factors discussed above, namely, length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant, together with such other circumstances and rules of law as may be appropriate to speedy-trial resolution (*Moore v. Arizona,* supra), we cannot say that the remedy here should be dismissal. The rights were violated, but, when all relevant things are considered, justice does not call out for the imposition of this stringent remedy. But a wrong has, indeed, been done and we cannot go back in time to correct it, but we can and do, however, admonish law enforcement officials throughout Wyoming that this must not happen again, and all persons—whether they be prisoners or whomsoever—will be given their Rule-5 and speedy-trial rights, failing which the supervisory authority of this court will be brought into play to address such negligent conduct.

### ERROR III (supra)

The appellants do not cite any authority whatever in support of their third alleged error. In such instance, this court will not consider the issue. *Otte v. State,* Wyo., 563 P.2d 1361; *Connor v. State,* Wyo., 537 P.2d 715; *Valerio v. State,* Wyo., 429 P.2d 317; and *Smith v. City of Casper,* Wyo., 419 P.2d 704.

Affirmed.

THOMAS, Justice, specially concurring.

I am in complete accord with all that is said in the opinion of the Court. I do have one additional concern. Delay in the prosecution of a criminal case is as likely to be detrimental to the State as to the defendant. The dimming of memories; the loss of evidence; or the unavailability of witnesses may prevent the State from carrying its burden of proving a defendant guilty beyond a reasonable doubt. The best interests of the citizens are served by prompt and sure punishment of those who commit crimes. Not only have those responsible for the prosecution of this case violated the rights of these defendants, but they also have failed to perform the responsibilities, which by virtue of their offices, they have assumed. Public officials should not casually or designedly hazard the interest of the people in enforcement of the laws of the State. Those who do should expect to account to their constituencies for such failures for they have not accomplished the obligations of the offices which they hold.