Thomas COOK, Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 5443.

Supreme Court of Wyoming.

July 15, 1981.

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program, Laramie, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Samuel A. Soulé, Senior Asst. Atty. Gen., Cheyenne, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

Appellant, Thomas Cook, was found guilty in Natrona County District Court of armed robbery and sentenced to five to seven years in the Wyoming State Penitentiary. Mr. Cook raises two issues challenging the lower court decision.

The first argument charges that an illegal arrest occurred because the police officers lacked probable cause to stop the vehicle in which appellant was riding. Once having established this position, the appellant would invoke the exclusionary rule through the "fruit of the poisonous tree" doctrine for purposes of suppressing all evidence resulting from this initial illegality, thereby challenging the trial court's denial of the motion to suppress.

The second argument urges that appellant has been denied his constitutional right to a speedy trial because of a District Court Rule 22 violation.

Because we find the stop reasonable in light of all the circumstances, and no reversible error with regard to the speedy trial question, we will affirm.

## THE FACTS

Shortly after midnight, on the 24th of January, 1980, the Best Western East Motel in Casper was robbed of $45 and an unspecified amount of change. The robber was an armed youth with shoulder-length hair. Upon his departure, Lavina Sexton, the night clerk at the motel, notified the police that the gunman was headed east on Yellowstone toward the Red and White Cafe. When a police officer arrived on the scene, it became clear that Ms. Sexton had mistakenly stated "east" when she meant "west" on Yellowstone, nonetheless toward the Red and White Cafe. Lieutenant Dorvola left the dispatch room at the Casper Police Department upon hearing the initial report. Enroute to the scene, he heard the corrected version and also received a brief description of the suspect, including race, height, clothing and "shoulder-length brown hair parted in the middle." The lieutenant did not go to the scene of the robbery, but proceeded to a spot about one-fourth mile northwest of the motel, and while there he observed a white van coming from a private area, where such a vehicle should not have been at this time of night and under the circumstances existing at this time and place. As the van passed Lieutenant Dorvola in his car, he observed two people, one of whom was a passenger with shoulder-length hair. Subsequently, the van was stopped by Lieutenant Dorvola and immediately thereafter other officers arrived at the scene. The occupants were asked to remove themselves from the van—which they did—and after which they were subjected to a patdown search. No weapons were discovered but a large amount of change was felt in the passenger's pocket. It was at this juncture that the officers observed that the defendant passenger matched the description given by the motel night clerk. With his "consent," the passenger (appellant) was taken back to the motel and there identified by Ms. Sexton, the night clerk, as the robber. Appellant was then advised that he was under arrest given his *Miranda* warnings, and removed to the Casper Hall of Justice where he later gave an incriminating statement of confession.

## COURSE OF PROCEEDING

Appellant Cook was charged with aggravated robbery in violation of § 6–4–402, W.S.1977,[1] on February 6, 1980, following his arrest on January 24, 1980. Appellant was unable to post bond and, pursuant to a request by the county attorney, the trial was set for May 19, 1980. The county attorney thereafter requested a setting of the trial for June 16, 1980. Notice of this setting was issued. A motion to suppress was heard and denied on May 12, 1980. A motion to dismiss for a speedy trial violation was made by appellant on May 21, 1980, which motion was also denied. Mr. Cook was tried before a jury beginning June 16, 1980, as a result of which he was convicted and sentenced.

## SUPPRESSION OF THE EVIDENCE

Appellant urges arrest without probable cause and the violation of his Fourth Amendment rights with the result that evidence was obtained illegally under the "fruit of the poisonous tree" doctrine. An analysis of this issue requires that we look at the stop, the arrest, and the voluntariness of appellant's consent. We must decide if any of these steps produced evidence which the law delineates as "fruit of the poisonous tree."

## THE STOP

■ Appellant contends that when Lieutenant Dorvola stopped the van and asked

1. Section 6–4–402, W.S.1977, provides:

"Whoever forcibly and feloniously takes from the person or possession of another any property of value, by violence or by putting in fear, when a firearm or other deadly weapon is used or exhibited in the commission of the offense, is guilty of aggravated robbery and shall be imprisoned in the penitentiary for not less than five (5) years nor more than fifty (50) years."

the occupants to step out, an arrest in fact occurred even though the officer has no probable cause therefor. While in most cases probable cause is necessary for an arrest with or without a warrant, *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), something less than probable cause is required for an investigatory or "*Terry*"-type stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Parkhurst v. State*, Wyo., 628 P.2d 1369 (1981); *Rodarte v. City of Riverton*, Wyo., 552 P.2d 1245 (1976). The United States Supreme Court has recently recognized the different attempts to define the notion of "less than those constituting probable cause" which justifies an investigatory stop. *United States v. Cortez*, —— U.S. ——, 101 S.Ct. 690, 697, 66 L.Ed.2d 621 (1981). The court concluded that no matter what the term, the totality of the circumstances is what must be considered. These circumstances must lead to a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez*, supra, 101 S.Ct. at 695.

■ When appellant Cook was stopped, the following factors made up the circumstantial situation: (1) it was just after 1:00 a. m.; (2) an armed robbery had just taken place; (3) within one-half mile of the scene of the robbery, a police officer observed a vehicle coming from a somewhat private area—an area where the vehicle had no business being; and (4) in the vehicle, the officer observed a passenger, whose hair length at least matched the description of the robber. These four factors are the "specific and articulable facts" required for a "*Terry*"-type stop. The facts alone do not complete the picture. Reasonable inferences can be drawn from these facts. The inferences are those formed by an experienced police officer. *Terry v. Ohio*, supra.

"* * * [W]hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspi-

cion of a particular person—and for action on that suspicion. * * *" *Cortez*, supra, 101 S.Ct. at 695.

The circumstances present in this case, along with reasonable inferences by an experienced police officer, furnished ample grounds for finding a reasonable and objective basis for an investigatory stop of the van.

Once stopped, the fact that the officers asked the occupants to step out of the vehicle does not necessarily imply that they were under arrest. Under *Terry*, police officers are authorized to conduct such a "patdown" as is necessary for their own safety. Since the police had reason to believe the suspect was armed, it was not unreasonable to ask the occupants to remove themselves from the van so that a pat-down for weapons could be conducted and for the further purpose of providing a better opportunity for observation by the officers. *Parkhurst*, supra, 628 P.2d at 1376.

### THE ARREST

■ Once the vehicle was stopped and the passengers observed and frisked, arguably probable cause for arrest then existed. The fact that the police officers contend appellant was not under arrest until he was identified back at the motel is of little significance. *Rodarte*, supra. When appellant was stopped and it was requested that he remove himself from the van, the police officers could then see that he matched the description of the robber given by Ms. Sexton. This factor coupled with appellant's presence near the scene of the robbery at an early hour of the morning was sufficient to "'warrant a man of reasonable caution in the belief that' an offense has been * * * committed [by the person to be arrested]. *Carroll v. United States*, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543]." *Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302 [1311] 93 L.Ed. 1879 (1949).

■ Having arrested appellant, the police then possessed the authority to transport him back to the motel for purposes of further identification. Even though *Miranda* warnings were not given at that time,

there is no Fifth Amendment problem. *Miranda* warnings are only required before custodial interrogation takes place for purposes of protecting a defendant's Fifth Amendment right against self-incrimination. *Parkhurst*, supra, concurring opinion, 628 P.2d 1385; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L. R.3d 974 (1966). There is no suggestion that the police officers attempted to interrogate appellant before he was identified and general on-the-scene questioning does not require *Miranda* warnings be given. *Parkhurst*, supra, concurring opinion, at 1387. The fact that appellant was taken to be identified does not amount to self-incrimination. The Fifth Amendment privilege only protects against evidence of a "testimonial" or "communicative" nature. An identification does not fit into that category. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In this sequence of events there was no illegality which resulted in the incriminating statement of appellant. There was no "poisonous tree."

■ To take it a step further, even if we assume that the arrest did not occur until after the identification, there was nothing that took place prior to that time which violated appellant's rights. The stop was reasonable as an investigatory measure, and there is every indication that appellant voluntarily returned to the motel. Even if the return to the motel could be termed a "seizure," it was valid pursuant to appellant's consent. In a Fourth Amendment seizure situation, defendant's knowledge of the right to refuse to consent does not have to be shown. The voluntariness is decided in light of all the surrounding circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). There is no indication from the record that appellant was in any way threatened or forced into consenting. There was no show of force and no apparent hesitation on the part of the appellant. Admittedly, the presence of police officers represented some display of authority, but the totality of the situation leaves little question that voluntariness of the consent was present.

Since none of the steps in the sequence of events leading up to appellant's incriminating statement were tainted with illegality, there was no reason to suppress the evidence. The lower court's refusal to suppress is correct, and will, therefore, be upheld.

## SPEEDY TRIAL VIOLATION—RULE 22

Rule 22 of the Uniform Rules for the District Courts of the State of Wyoming was adopted September 14, 1979. The use of the rule has been somewhat limited, leaving much interpretation of the rule yet to be done. Among other things, the rule provides that speedy trial is the responsibility of the court and counsel,[2] that criminal trials will take precedence over civil trials,[3] and that criminal charges shall be brought to trial within 120 days following filing of an information[4] unless the defendant is unable to obtain pretrial release, in which case the charge shall be brought to trial within 90 days following the information.[5] The rule remains somewhat flexible in that it provides for possible continuances or delays.[6] These continuances may be made on motion by defendant,[7] by prosecuting attorney,[8] or by the court on its own motion.[9]

2. Rule 22(a), Uniform Rules for the District Courts of the State of Wyoming.

3. Rule 22(b), Uniform Rules for the District Courts of the State of Wyoming.

4. Rule 22(c), Uniform Rules for the District Courts of the State of Wyoming.

5. Rule 22(d), Uniform Rules for the District Courts of the State of Wyoming.

6. Rule 22(f), Uniform Rules for the District Courts of the State of Wyoming.

7. Rule 22(f)(1), Uniform Rules for the District Courts of the State of Wyoming.

8. Rule 22(f)(2), Uniform Rules for the District Courts of the State of Wyoming.

9. Rule 22(f)(3), Uniform Rules for the District Courts of the State of Wyoming.

There is no disputing the fact that, in this case, the 90-day time limit provided for in the rule was not complied with. Appellant was charged by information on February 7, 1980, and trial was not even set until May 19, 1980—12 days past the 90-day limit. The trial date was thereafter changed to June 16, 1980—40 days past the 90-day limit.

■ Appellant contends that Rule 22 provides the exclusive and mandatory guidance for a speedy-trial action. It is further the defendant's contention that the burden of providing a speedy trial is on the State, the State has failed to meet that burden, and in light of the fact that the record reflects no motions for continuance or delay, a Rule 22 violation has occurred.

We cannot agree with appellant's conclusion. According to the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), a determination that a speedy-trial violation has occurred is the result of a balancing test. We put that balancing test to use in a recent Wyoming case, *Estrada v. State*, Wyo., 611 P.2d 850 (1980). The test requires a balancing of four factors: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. *Estrada*, supra at 852.

Appellant recognizes the balancing test of *Barker*, supra, but concludes that where states set forth specific standards, some of the problems of the balancing test can be eliminated. However, this court refuses to accept that argument, and in a recent decision on a similar matter, has set forth the reasons why. *Robinson v. State*, Wyo., 627 P.2d 168 (1981). We held in *Robinson* that a strict reading of the time limitations in Rule 22 conflicts with the balancing test from *Barker*. Rule 22(c) and (d) set certain time limits to define a speedy trial violation. However, under the balancing test, the length of time between the information (charging) and the trial is only one of several factors to be considered. *Estrada*, supra at 852. The time limitation of the rule limits the flexibility and thus the preference for the balancing test. Nonetheless, the result in *Robinson* does not indicate an attempt to "do away" with Rule 22. In fact, we find the requisite flexibility by reading Rule 22(d)—time limit—with Rule 22(f), which provides for continuances and delays.

■ Appellant argues that there was no motion for continuance or delay, which is the only means by which the 90-day time limit can be extended, thereby alleging a Rule 22 violation. However, in *Robinson* we also addressed this issue and concluded that when a case is set beyond the 90-day limit, it is done so on the court's own motion in administering its docket. *Robinson*, supra at 172. This provides adequate notice to defendant, with time to object and opportunity to raise issues of possible prejudice. By use of this reasoning, the initial date set for the Cook trial, whether May 19, 1980, or June 16, 1980, did not entail an unnecessary delay. The delay, whether 12 days or 40 days, was by the court on its own motion required in the "due administration of justice." [10]

■ Appellant's burden-of-proof argument is also misguided. The argument begins with pre-Rule 22 decisions placing the burden on the State. *Barker v. Wingo*, supra; *Estrada v. State*, supra. We find no difficulty in this initial approach; however, appellant goes on to read that same burden into Rule 22. Rule 22(a) provides:

"It shall be the responsibility of court and counsel to insure to each person charged with a crime of speedy trial in accordance with the provisions of this rule."

There exists no indication here that the State bears the entire burden. In fact, it would appear that defense counsel has an affirmative duty to make certain a speedy-trial violation does not occur. Once the State or the court sets a trial date beyond the 90-day limit, as long as there is a valid reason for doing so, their burden has been met. At that point defense counsel has the

---

**10.** Rule 22(f)(3), Uniform Rules for District Courts of the State of Wyoming.

burden (an affirmative duty) of making certain that the delay does not prejudice defendant in any way.

█ Furthermore, failure by defense counsel to fulfill that duty within a reasonable time operates as a waiver of any objections. Silence or inaction on the part of defendant acts as implied abandonment of the right to speedy trial. *Cherniwchan v. State*, Wyo., 594 P.2d 464 (1979).

█ Appellant's final argument with regard to interpretation of Rule 22 raises the question of prejudice to defendant. Rule 22 provides that when a motion is made to continue or delay a case, no prejudice to the defendant may result. The defendant must show "specifically in writing" how the delay will cause prejudice.[11]

Here appellant changes direction and moves toward use of *Estrada* rather than Rule 22. Appellant makes use of *Estrada* to say that no prejudice need be shown in a Rule 22 violation. However, this ruling with regard to prejudice must be read with the balancing rule. Within the context of the balancing test, prejudice is only a factor to be considered, and must be considered with all other elements and circumstances of the balancing. *Cherniwchan*, supra at 468. It is in this light that prejudice need not be shown. When a balancing of factors occurs, prejudice need not be present to find a speedy-trial violation. Appellant attempts to use the prejudice argument standing alone. The attempt cannot succeed. Rule 22 expressly provides that defendant must show specific prejudice by a continuance or delay. Alleging a Rule 22 violation, appellant must comply with this requirement.

Summarizing the elements of this issue, it appears that (1) upon setting of the trial date, the court made a valid motion on its own behalf for a continuance under Rule 22(f); (2) the motion provided ample notice to appellant; (3) appellant failed to raise the speedy trial issue until after the 90 days were up, thus waiving his right; and (4)

when appellant did raise the speedy-trial issue, he failed to allege specific prejudice required by Rule 22. In light of these circumstances, we are forced to conclude that no speedy-trial violation has occurred. The lower court holding of this same conclusion must be affirmed.

## CONCLUSION

For the reasons given, we find that appellant's challenge to the lower court decision cannot succeed. We find no illegality present in the stop, arrest or identification leading up to the incriminating statement. Consequently, no reason exists to suppress the evidence. Our interpretation of Rule 22 leads us to the conclusion that no speedy-trial issue can be raised in this case. The lower court holding with regard to these issues is affirmed.

THOMAS, Justice, concurring.

I concur in and choose to offer additional support for the majority opinion in this case. I have no question that in *Robinson v. State*, Wyo., 627 P.2d 168 (1981), this court stated with clarity the result when a conflict is present between the application of Rule 22 of the Uniform Rules for the District Courts of the State of Wyoming and the standard espoused in *Estrada v. State*, Wyo., 611 P.2d 850 (1980).

The potential for conflict definitely does not require this Court to expunge Rule 22 of the Uniform Rules for the District Courts. In the application of these standards there is a conflict only when the district court permits a case to go to trial because of compliance with Rule 22 when under the standard of *Estrada v. State*, supra, there has been a denial of a speedy trial, or in the alternative when the district court refuses to let a case go to trial because of noncompliance with Rule 22 when there has in fact been no denial of a speedy trial under *Estrada v. State*. *Robinson v. State*, supra, resolves such problems.

11. Rule 22(f)(2)(iii) and (f)(3), Uniform Rules for the District Courts of the State of Wyoming.

Beyond that it is my view that Rule 22 represents a salutary effort by the members of the trial bench in this state to develop a responsible standard designed to assure in practically all instances that a defendant in a criminal cause receives a speedy trial. I support that effort, and I wholeheartedly agree with the majority view that we look to the application of that rule and honor it to the extent it does not conflict with the standard of *Estrada v. State,* supra.

ROONEY, Justice, specially concurring.

I cannot agree with the last portion of the majority opinion which premises the determination of no violation of the speedy trial requirement on the provisions of Rule 22 of the Uniform Rules for the District Courts of the State of Wyoming (hereinafter referred to as Rule 22).[1] As stated in *Robinson v. State,* Wyo., 627 P.2d 168, 172 (1981):

"* * * Its adoption was accordingly admirable but the fixing of an absolute deadline by Rule 22(d), Uniform Rules for the District Courts of the State of Wyoming *was in conflict with, superseded and modified by Estrada.*" (Emphasis added and footnote omitted.)[2]

The opinion in this case does not resolve the speedy trial issue on the basis of *Estrada v. State,* Wyo., 611 P.2d 850 (1980). The majority opinion refers to *Estrada* as a "pre-Rule 22" decision. It was not. As reflected in *Robinson,* Rule 22 was adopted September 14, 1979, over eight months before the decision in *Estrada* on May 28, 1980. *Estrada* was decided in full recognition of the existence of Rule 22, and it superseded any part of Rule 22 in conflict with it.

The conflict is obvious. A determination as to conformance with the speedy trial requirement cannot depend on a balancing test and have a specific time requirement at the same time. It must be one or the other. A criminal defendant is entitled to know which standard is to be applied.

In a given case, the *Estrada* standard may either shorten or lengthen the 120- or 90-day limit. For one in custody, as here, the *Estrada* standard may require the trial within 40 days. Rule 22 authorization to do so in 90 days would conflict therewith. Or for such a one, the *Estrada* standard may justify the trial in 200 days. Rule 22 mandating the trial in 90 days would also conflict therewith. Subsection (h) of Rule 22 provides that "[t]he time limits in (c) and (d) are *maximum* limits" (emphasis added). If the rules are to have any efficacy at all, they should mean what they say. Yet, they cannot do so if *Estrada* is to be followed.

I believe the holding in *Estrada* has completely replaced those portions of Rule 22 which mandate a standard other than the balancing test set forth in *Estrada.* I believe the test set forth in *Estrada* is the only standard by which it can be determined whether or not a defendant has received a speedy trial.

I specially concur with the majority opinion, rather than dissent therefrom, because I find that application of the *Estrada* standard to the facts of this case does not uphold appellant's claim. Under *Estrada* (and see *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); and *Cherniwchan v. State,* Wyo., 594 P.2d 464 (1979)), four specific factors must be considered in making the determination: (1)

---

1. That portion of Rule 22 pertinent to this special concurrence provides:

   "(c) *Time limit.*—A criminal charge shall be brought to trial within 120 days following the filing of information or indictment in district court.

   "(d) *Defendant in custody.*—A defendant unable to obtain pretrial release shall have priority and the charge shall be brought to trial within 90 days following the filing of the information or indictment in district court.

   \* \* \* \* \* \*

   "(h) *The time limits in (c) and (d) are maximum limits.*—Local court rules may shorten those periods."

2. I did not specially concur with the opinion in *Robinson v. State,* supra, because of the quoted statement and because the case was decided through application of the balancing test set forth in *Estrada v. State,* infra. I considered other references to Rule 22 in *Robinson* to be superfluous in view of this statement and, thus, to be obiter dicta.

the length of delay in getting to trial, (2) the reason for the delay, (3) the assertion of rights by the defendant during the delay, and (4) the prejudice suffered by defendant as a result.

Applying the factors to the facts of this case, I find:

(1) The length of time between the filing of the information (February 7, 1980) and the trial (June 16, 1980) was about a week more than four months. This was not unduly long. The time in *Estrada* was eleven months.

(2) The only record indication for the reason for delay is in the trial judge's comments that it concerned the "calendar with previous settings and with the change of Judge business." The parties have not otherwise set forth or argued the reason for delay. The record reflects ongoing activity in the case and that it was not subject to inattention.

(3) Appellant did not assert an objection to delay until May 21, 1980, at which time he filed a motion to dismiss for failure to be brought to trial within the 90 days provided by subsection (d) of Rule 22. At the same time he filed this motion, he filed a motion for suspension of trial pursuant to § 7–13–301, W.S.1977.[3] The trial was held 26 days after appellant asserted his objection, and of the 26-day delay, 20 days were occasioned by appellant's request for a change of judge.

(4) Inasmuch as the delay was not unreasonable, there can be no prejudice from an undue delay. Beyond that, detriment or disadvantage to appellant is not indicated.

A complete analysis of the issue must be made in conjunction with a chronology of pertinent case activity:

February 7, 1980—Information was filed.
February 8, 1980—Case set for trial on May 19, 1980.
March 13, 1980—Appellant filed motions to suppress, for discovery and inspec-

tion and for obtaining preliminary hearing transcript in forma pauperis.
May 5, 1980—Appellant requested motion to suppress be set for hearing.
May 6, 1980—Hearing on motion to suppress was set for May 12, 1980.
May 15, 1980—Decision letter denied motion to suppress.
May 19, 1980—Come on for trial but continued because case "stacked" ahead of it was being tried.
May 21, 1980—Trial set for May 27, 1980.
May 21, 1980—Appellant filed motions for suspension of trial, in limine, and to dismiss for failure to afford trial within 90 days as specified in Rule 22.
May 22, 1980—Appellant filed motion for change in judge from Judge Spangler.
May 22, 1980—Case set for trial on June 16, 1980.
June 13, 1980—Order granting motion for change in judge.
June 16, 1980—Trial held.

Applying the standard set forth in *Estrada*, I conclude that the requirement for a speedy trial was met in this case.

I would affirm on that basis only.

---

**3.** Section 7–13–301, W.S.1977 provides in pertinent part:

"* * * With the consent of a defendant charged with a crime, except a crime punish-

able by death or life imprisonment, the court may suspend trial and place such defendant on probation."