STATE of Minnesota, Respondent,

v.

Steve L'ITALIEN, Appellant.

No. C7–84–1414.

Court of Appeals of Minnesota.

Feb. 26, 1985.

Review Denied April 26, 1985.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, Robert W. Kelly, Washington County Atty., Stillwater, for respondent.

Elizabeth B. Davies, Conflict Atty., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK, and SEDGWICK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Appellant Steve L'Italien appeals his conviction for escape from custody, Minn.Stat. § 609.485, subd. 2(1) and subd. 4(1) (1982). On appeal he claims he did not violate the escape statute, was the victim of discriminatory prosecution, was denied a speedy trial, and that several other reversible pre-trial errors occurred. We affirm.

## FACTS

L'Italien has a long criminal record and was serving concurrent sentences for a Washington County burglary and a Ramsey County theft conviction at the Minnesota Correctional Facility—Stillwater at Bayport. After he was transferred to the minimum security unit, L'Italien applied for a furlough. The furlough application conditions included that "willful failure to return on time to the institution from furlough shall be considered an escape" and that he "must return promptly on the day and by the time indicated." L'Italien had to remain within a 15-mile radius of his destination, Oakdale, Minnesota.

L'Italien was granted a furlough from 4:00 p.m., February 10, 1984, to 9:00 p.m., February 14, 1984. He did not return at the expected time. Instead, on February 16, 1984, he was arrested in Utica, New York on a traffic offense and was subsequently charged by the Washington County Attorney with escape on March 13, 1984.

L'Italien waived a jury trial and proceeded pro se at trial, assisted by a public defender. At his trial which began on July 3, 1984, he attempted to show he could not be prosecuted for escape since he was on "temporary parole" and that he was being discriminated against since not all escapees are prosecuted for escape from custody. The trial court found appellant guilty and specifically found that appellant failed to prove purposeful discrimination in prosecuting him for escape. He was sentenced to one year and one day, consecutive to his burglary sentence.

## ISSUES

1. Was appellant properly prosecuted for escape from custody?

2. Was prosecution of appellant unfairly discriminatory?

3. Was appellant denied a speedy trial?

4. Was appellant denied a fair trial by the cumulative effect of pretrial errors?

## ANALYSIS

### I.

■ Escape from custody includes "departure without lawful authority and failure to return to custody following temporary leave granted for a specific purpose or limited period." Minn.Stat. § 609.485, subd. 1 (1982). Persons *on parole* are specifically exempted from the escape statute. Minn.Stat. § 609.485, subd. 3 (1982). L'Italien argues he was on temporary parole, not on a furlough. This argument has no merit. Minn.Stat. § 243.14 (1982), the statute which authorized temporary parole, was repealed in 1983. Laws of Minnesota 1983, ch. 274, § 19. L'Italien was on a furlough. Minn.Stat. § 244.07, subd. 1 (1982), states in relevant part:

> If consistent with the public interest, the commissioner may, under rules prescribed by the commissioner, furlough any inmate in custody to any point within the state for up to five days. A furlough may be granted to assist the inmate with family needs, personal health needs, or reintegration into society.

L'Italien applied for a furlough on a form entitled "APPLICATION FOR FURLOUGH." The authorizing document allowed L'Italien out on release and, signed by him, clearly states he is out on a furlough. In addition, L'Italien signed a form acknowledging he could be prosecuted for escape. Finally, at his first appearance in court on the escape charge, he acknowledged that he was on a furlough. The escape statute is thus applicable. The fact that a furlough involves allowing inmates to be away from the institution for short periods of time and is similar in that respect to the old temporary parole is of little

support to L'Italien. In fact, testimony showed that temporary paroles were effectively terminated in 1977 or 1978. We also reject L'Italien's contention that, because Myron Johnson is listed on the furlough application and agreement and Johnson is a parole agent, that means L'Italien was on parole.

L'Italien finally argues that it is absurd to think the legislature would enact a law adding a maximum five-year sentence to a person who has possibly 60 days left on a sentence and then fails to return from a furlough. *See* Minn.Stat. § 609.485, subd. 4(1). We disagree. What is absurd is the idea that an inmate is immune from prosecution for escape when, instead of returning from a furlough, he flees to New York.

### II.

■ L'Italien argued at trial, although it should have been raised earlier, *City of Minneapolis v. Buschette*, 307 Minn. 60, 66, 240 N.W.2d 500, 503 (1976), that he was the victim of discriminatory prosecution. To succeed in this claim, appellant had to show by a clear preponderance: (1) that others similarly situated have not been proceeded against for the same type of conduct and that he had been singled out, and (2) that he was singled out for prosecution out of invidiousness or in bad faith, i.e., based on impermissible considerations such as race, religion, or the desire to prevent his exercise of constitutional rights. *Id.*, 307 Minn. at 71–72, n. 8, 240 N.W.2d at 506, n. 8.

■ The trial court's findings that L'Italien failed to prove purposeful discrimination are not clearly erroneous. *See State v. Linder*, 268 N.W.2d 734, 735 (Minn. 1978). In fact, he did not approach satisfying either requirement.

1. The evidence showed that the policy of the Commissioner of Corrections is to turn over all escapees to the appropriate county attorney for a determination on whether to prosecute for escape. L'Italien

was not singled out for referral by the Commissioner.

L'Italien was also not singled out for prosecution. His attempt to bolster his theory by claiming seven individuals were not prosecuted by their respective counties (only one from Washington County) is not persuasive proof that he was the unfair victim of discriminatory enforcement. It does not show he was singled out. In fact, the record shows the Washington County Attorney has prosecuted a number of people for escape during the two-year period just prior to L'Italien's prosecution.

2. L'Italien also failed to show the decision to prosecute him was made in bad faith or on impermissible considerations.

Thus, the record amply supports the trial court's finding that the prosecution of L'Italien for escape was not the result of purposeful discrimination against him.

### III.

L'Italien claims he was denied a speedy trial. We are hampered by the lack of a record upon which we can review his claims because he failed to pursue the matter and failed to establish a record. It appears that on June 5, 1984, L'Italien filed a motion to dismiss for lack of a speedy trial, but it was never pursued and appears to have been waived at trial on July 3, 1984.

To determine whether the right to a speedy trial has been violated, we must examine four factors. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

1. *Length of Delay.* L'Italien has not shown any delay. He was charged by complaint on March 13, 1984, and tried on July 3, 1984, about three and one-half months later. A mere three and one-half month gap between the filing of the complaint and the trial is not a strong foundation from which one can build a speedy trial violation.

2. *Reason for Delay*—There is no evidence in the record on the reason for the "delay."

3. *Defendant's Assertion.* L'Italien filed a motion to dismiss on speedy trial grounds on June 5, 1984, and trial commenced within 60 days from this date. *See* Minn.R.Crim.P. 11.10. He argues that his written requests made *prior* to the date he was charged should be used to calculate the date of assertion of the right. However, these requests are ineffective because the defendant has no right to demand a speedy trial before he is charged. "The time period shall not begin to run earlier than the date of the not guilty plea." Minn.R.Crim.P. 11.10. Not guilty pleas cannot be made at the defendant's initial appearance at court, 8.01 Minn.R.Crim.P., but are generally made at the omnibus hearing. Minn.R.Crim.P. 11.10.

4. *Prejudice.* L'Italien has not shown any prejudice. His trial was not adversely affected since the brief passage of time had no effect on his trial. His defense was not prejudiced since his defense was based on his theory that failure to return from furlough was not a violation of the escape statute. In addition, the "anxiety" suffered waiting for trial is not a serious allegation of prejudice. *See State v. Givens,* 356 N.W.2d 58 (Minn.Ct.App.1984).

In sum, we conclude that L'Italien's speedy trial claim has no merit.

### IV.

L'Italien raises a number of errors which allegedly occurred pre-trial and mandate either reversal or a new trial.

1. L'Italien claims he was not given his *Miranda* rights when he was arrested. *Miranda* warnings need only be given prior to in-custody interrogation and then only to preserve the State's right to introduce the results of the interrogation, if any, at trial. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Larson,* 346 N.W.2d 199 (Minn.Ct.App.1984). No such statements were taken from him or introduced at trial.

2. L'Italien claims he was not brought before a judicial officer within 36 hours of his arrest, Minn.R.Crim.P. 4.02, subd. 5(1). Even if this rule applied to one

who has been recaptured and returned to prison, any failure to abide by this rule does not entitle L'Italien to his requested relief. *See State v. Wiberg,* 296 N.W.2d 388, 392–93 (Minn.1980).

3. L'Italien claims he was not appointed counsel with whom he did not have a conflict of interest at his first appearance, as a result of a pending lawsuit he had filed against the public defenders in the Tenth Judicial District. This argument is without merit.

4. L'Italien claims his demand for change of venue should have been granted. This too is without merit. He failed to show that he could not obtain a fair trial in Washington County. His claim of prejudicial atmosphere in Washington County was unsubstantiated as he did not show the general public in Washington County was hostile towards him. However, his defense was a legal issue, not a jury question. The trial court did not abuse its discretion in refusing to change venue.

5. L'Italien claims his notice to remove Judge Tomljanovich was erroneously denied. Judge Tomljanovich told L'Italien that Judge Thoreen could hear the case if L'Italien wanted, and L'Italien withdrew his affidavit of prejudice against Judge Tomljanovich. There is no merit to his argument.

### DECISION

L'Italien was properly and promptly convicted of escape for failing to return from a furlough.

Affirmed.