**Brian BINGER, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

No. 85–116.

Supreme Court of Wyoming.

Jan. 8, 1986.

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, and Margaret Ann Maurer, Legal Intern, Wyoming Public Defender Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Darold W. Killmer, Legal Intern, for appellee.

Before THOMAS, C.J., ROONEY,* BROWN and CARDINE, JJ., and GUTHRIE, J., Retired.

ROONEY, Justice.

This appeal is from a judgment and sentence entered after a jury trial in which appellant was found guilty of one count of forgery in violation of § 6-2-101, W.S. 1977. Appellant contends that he was denied his right to a speedy trial and that he was improperly sentenced under the felony forgery statute in effect at the time of the offense, rather than being sentenced under the subsequently enacted misdemeanor check fraud statute.

We affirm.

On October 23, 1982, appellant attempted to pay for the purchase of clothing from a store in Powell with a check for $87.93, drawn on the American National Bank, which he signed with the name of Edward Brian. A telephonic attempt to verify the check as genuine by the store owner was unsuccessful, whereupon appellant tore up the check, returned some of the clothing, and paid for the remainder in cash. The

forgery charge was based on this check. The pieces of the torn check were taped together and made an exhibit at the trial. The fact that neither appellant nor Edward Brian had ever had an account at the American National Bank was established at the trial.

## SPEEDY TRIAL

The following chronology is pertinent to appellant's contention that he was denied a speedy trial:

November 16, 1982—Criminal complaint made and filed

November 18, 1982—Appellant arrested

December 14, 1982—Information was issued

December 20, 1982—Information was filed

January 5, 1983—Arraignment had and plea of not guilty entered

January 10, 1983—Order setting trial for April 5, 1983 (filed January 12, 1983)

February 8, 1983—Appellant wrote to judge stating that he had "relieved" the public defender from representing him, that he had contacted three law firms who would not represent him, and requesting appointment of one of two named attorneys to represent him

February 28, 1983—Appellant wrote to judge stating that he had contacted five law firms who would not represent him, requested appointment of a named attorney, and requested access to some law books

March 14, 1983—Judge wrote to appellant advising him that public defender would represent him unless a "cogent and logical" reason was presented to relieve him (filed March 15, 1983)

April 6, 1983—Notification of setting on May 26, 1983, for plea changes (filed April 13, 1983)

May 31, 1983—Appellant moved, pro se, to dismiss for lack of speedy trial (filed June 6, 1983)

* Retired November 30, 1985.

June 12, 1983—Motion to dismiss set for hearing on June 23, 1983 (filed June 14, 1983)

June 17, 1983—Public defender moved to withdraw from case and court authorized withdrawal and appointed Dick Kahl to represent appellant (filed June 20, 1983)

June 20, 1983—Appellant again filed motion, pro se, to dismiss for lack of speedy trial (dated May 31, 1983)

June 21, 1983—Order allowing Dick Kahl to withdraw for conflict of interest and appointment of Ernest F. Fuller, Jr. to represent appellant (filed June 21, 1983)

July 5, 1983—Hearing set for June 23, 1983, was reset for July 7, 1983, because of recent appointment of Ernest Fuller, Jr. to represent appellant (filed July 5, 1983)

July 11, 1983—Order reflecting appearance for hearing on July 5, 1983, and request by appellant's counsel for continuance, and resetting hearing for July 11, 1983 (filed July 12, 1983)

July 28, 1983—Order setting trial for August 17, 1983 (filed July 28, 1983)

August 3, 1983—Opinion letter that order denying motion for speedy trial be prepared inasmuch as "the Defendant himself occasioned many of the delays that came about by reason of his constantly changing counsel," and inasmuch as there was nothing to indicate that appellant was "prejudiced or greatly harmed" by the delay (filed August 4, 1983)

August 9, 1983—Appellant moved to change judge (filed August 9, 1983)

August 10, 1983—Appellant moved for continuance of trial (filed August 10, 1983)

August 10, 1983—Appellant moved for discovery and inspection reciting that it was made at a reasonable time under Rule 18, W.R.Cr.P., inasmuch as appellant's present attorney was appointed a month and a half before filing of the motion (filed August 10, 1983)

August 15, 1983—Order denying motion to dismiss reciting that appellant "occa-sioned many of the delays" by constant change of counsel and that he had not shown "prejudice or harm" (filed August 16, 1983)

August 10, 1983—Appellant's request for setting of hearing on motions for change of judge, for discovery and inspection, and for continuance (filed August 18, 1983)

August 17, 1983—Setting of hearing on motions for change of judge, for discovery and inspection, and for continuance on August 17, 1983 (filed August 18, 1983)

August 24, 1983—Order granting motion for continuance of trial until September 1, 1983 (filed August 24, 1983)

August 23, 1983—Order denying motion for change of judge (filed August 25, 1983)

September 1, 1983—Letter reciting that three cases, including this one, are continued for trial until October 25, 1983, "due to the length of the Pote case" (filed September 2, 1983)

September 14, 1983—Bond posted for appellant (filed September 14, 1983)

October 11, 1983—Motion by appellant's attorney to withdraw inasmuch as appellant was "in the process" of obtaining other counsel (filed October 11, 1983); other counsel was not obtained and the withdrawal was not made

October 11, 1983—Appellant moved for continuance of trial (filed October 11, 1983)

November 1, 1983—Trial started; the jury was selected and opening statements were made; the judge became ill and the trial was continued

November 8, 1983—Order setting trial for December 19, 1983 (filed November 9, 1983)

November 2, 1983—Motion for leave to dismiss all but one count of the information inasmuch as the State "is unable to secure the attendance of a material witness with respect" to the dismissed counts (filed November 18, 1983)

December 19, 1983—Trial resumed; the parties were then allowed to again voir dire the jury.

Four factors are considered and balanced to determine whether a defendant is deprived of his constitutional right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Grable v. State*, Wyo., 649 P.2d 663 (1982); *Estrada v. State*, Wyo., 611 P.2d 850 (1980); *Phillips v. State*, Wyo., 597 P.2d 456 (1979); *Cherniwchan v. State*, Wyo., 594 P.2d 464 (1979). Considering and balancing these four factors in this case lead to the definite conclusion that appellant was not denied his right to a speedy trial.

The time span from the time of the filing of the information, *Tageant v. State*, Wyo., 683 P.2d 667 (1984), to the date of trial in this case was from December 20, 1982, to November 1, 1983, a period of about ten and one-half months. There was an additional continuance of the trial for one and one-half months occasioned by illness of the judge.

" * * * A defendant cannot be heard to claim that his rights to a speedy trial were violated because * * * a judge's illness forced trial continuances." *Heinrich v. State*, Wyo., 638 P.2d 641, 644 (1981).

Almost two months of the ten-and-one-half-month time span were occasioned by a resetting of the trial date of September 1, 1983, to October 25, 1983, because of the length of time being taken by the trial of another case. This case had been set for trial on two previous occasions, once for April 5, 1983, which was continued for consideration of an indicated change of plea, and once for August 17, 1983, which was continued pursuant to appellant's motion. Appellant also moved for a continuance of the trial date of October 25, 1983.

The length of delay in this case requires inquiry into the other three factors involved in the balancing process determi-native of a violation of the constitutional right to a speedy trial.

With reference to the second factor, most of the delay was caused by the appellant himself. He regularly expressed dissatisfaction with his attorneys and indicated his intention to change attorneys. He did change them three times. The judge appointed a new attorney each time. He indicated an intention to change again fourteen days before the trial commenced. He indicated that he had contacted five law firms in an unsuccessful effort to obtain counsel. The first request for a change came about a month after arraignment and about two months before the time originally set for trial. The last request to withdraw as counsel, made on October 11, 1983, fourteen days before the date set for trial, was accompanied by a second motion to continue the trial date. Hearings on motions of appellant were continued twice at his request. About a week before a trial date of August 17, 1983, appellant moved for continuance of it and for a change of judge. This first motion for continuance was granted on August 24, 1983.

Much of the cause of our delay was that occasioned by the appellant. As said in *Barker v. Wingo*, 92 S.Ct. at 2195:

" * * * [B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial. * * * "

And as said in *Phillips v. State*, 597 P.2d at 460–461:

" * * * [W]e find sufficient support in the record as to a whole for a determination that the delay was occasioned, at least in part, by the defendant himself.

 *  *  *  *  *  *

" * * * However, the tenor of the whole record—particularly the emphasis placed thereon by defendant in the affidavit and motions submitted by him—reflects the delay to have been occasioned, at least in part, by his desire and effort to obtain

private legal representation. * * *"
(Footnote omitted.)

And so it is with this case. The tenor of the record does not reflect a disregard of the requirement that appellant have attention given to the charge against him, that his case languish for want of diligent prosecution, or that there was a lack of good faith effort to attend to his case. The record does reflect delays occasioned by appellant's procedural actions—changes in attorneys, motions for continuances, change of judge, etc. Appellant is entitled to such procedural actions, but he cannot assert the loss of the constitutional right to a speedy trial when the trial delay is substantially a result of such actions on his part.

The "reason for the delay" balancing factor weighs heavily against appellant in this case.

Appellant asserted his right to a speedy trial by filing on June 6, 1983, and June 20, 1983, the two pro se motions for dismissal on that basis—about 168 and 182 days after the information was filed. About a fourth of that period was taken up with changing or attempting to change attorneys. Appellant's subsequent motions for continuance could indicate a lack of sincerity in the dismissal motions if not an actual waiver thereof.

Appellant has failed to indicate the manner in which he was prejudiced by any delay. Time was allowed off his sentence for incarceration time prior to sentence. We said in *Cherniwchan v. State*, 594 P.2d at 469:

"The nature of the prejudice that courts speak about when addressing speedy-trial constitutional rights run along these lines: Are the memories of the witnesses dimmed? Is the evidence lost? Have the delays brought about additional costs to the government and the defendant? How does a defendant go about showing the harm sustained by public accusation—public suspicion, the severing of family and social ties, and the personal anxiety? * * *"

Appellant was not penalized in any of these respects. All but one of the original counts in the information were dismissed when the State could no longer obtain the material witnesses to support them. The delay may well have worked to appellant's benefit rather than to his prejudice.

"A second difference between the right to speedy trial and the accused's other constitutional rights is that deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. * * *"
*Barker v. Wingo*, 92 S.Ct. at 2187.

In this instance, appellant did not present any evidence at trial and relied upon failure by the prosecution to establish the elements of the crime. There is no suggestion that he lost a witness or other evidence. There is no indication that the witnesses' memory of the incident were dimmed by time. Appellant's reputation, social ties, and "personal anxiety" were little, if any, affected by the delay in view of his extensive criminal record and previous convictions and incarcerations.

Balancing and weighing of all four of the factors by which a constitutional right to a speedy trial is determined result in a preponderance of weight that such right of appellant was not violated.

## PROPRIETY OF SENTENCE

Appellant argues that § 6–1–101(c), W.S. 1977 (June 1983 Replacement), is applicable to this case. It reads:

"In a case pending on or after the effective date of this act, involving a crime committed prior to the effective date, if the penalty under this act for the crime is different from the penalty under prior law, the court shall impose the lesser sentence."

Section 6–1–101(c) is part of the Wyoming Criminal Code of 1982, a recodification of most of the crimes. It became effective on July 1, 1983. Section 6–1–101(c) is, thus, applicable to this case.

The information charged a violation of § 6–2–101, the forgery statute which was in effect at the time of the crime. The information charged the unlawful forgery of the name of Edward Brian to a check drawn on the American National Bank and an attempt to pass it. Section 6–2–101 provided in pertinent part:

> "Every person who shall falsely make, alter, forge or counterfeit any * * * check * * * or shall utter, publish, pass or attempt to pass as true and genuine * * * any of the above-named false, altered, forged or counterfeited matters as above specified and described (knowing the same to be false, altered, forged or counterfeited) with intent to prejudice, damage or defraud any person or persons * * * shall be deemed guilty of forgery, and upon conviction thereof shall be punished by confinement in the penitentiary for a term not more than fourteen (14) years."

The Wyoming Criminal Code of 1982 provides in pertinent part:

> "§ 6–3–602. Forgery; penalties.
>
> "(a) A person is guilty of forgery if, with intent to defraud, he:
>
>     *    *    *    *    *    *
>
> "(ii) Makes, completes, executes, * * * issues or transfers any writing [1] so that it purports to be the act of another who did not authorize that act * *;
>
>     *    *    *    *    *    *
>
> "(b) * * * [F]orgery is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both."

■ Inasmuch as appellant's sentence was three to seven years, the sentence was within "the lesser" of the penalties provided for the crime of forgery under the Wyoming Criminal Code of 1982 and the crime of forgery as defined when the crime was committed. Accordingly, appellant's argument that § 6–1–101(c) makes improper the sentence in this case is without merit.

Incidental to appellant's contention on this issue is his argument that he should have been charged under the "check fraud" statute rather than under the forgery statute since the check fraud statute is a more specific statute and is, therefore, an exception to the general statute, citing *McArtor v. State*, Wyo., 699 P.2d 288 (1985); and *Capwell v. State*, Wyo., 686 P.2d 1148 (1984).

At the time of the crime, §§ 6–3–110 and 6–3–111, W.S.1977, made it a misdemeanor to,

> "(a) * * * with intent to defraud by obtaining money, merchandise, property, credit, or other thing of value, * * * make, draw, utter or deliver any check, draft or order for the payment of money * * * upon any bank * * * knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in such bank * * * for the payment of such check * * in full upon its presentation * * *." Section 6–3–110(a).

Similarly, § 6–3–702(a), W.S.1977 (June 1983 Replacement), of the Wyoming Criminal Code of 1982 provides in pertinent part:

> "(a) Any person who knowingly issues a check which is not paid because the drawer has insufficient funds with the drawee, has issued a fraudulent check and commits fraud by check unless the check is paid by the maker within five (5) days of receiving notice, personally given or sent to the address shown on the instrument of dishonor or nonpayment. * * * "

It made the crime a misdemeanor if the check was for a sum of less than $2,000 and a felony if it was for $2,000 or more.

---

1. " 'Writing' " is defined in § 6–3–601, W.S.1977 (June 1983 Replacement), as "printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, and other symbols of value, right, privilege or identification."

The legislative intent at all times was obviously to create two separate crimes, one for forgery and one for check fraud. The forgery prohibition is against the making of a deceptive document per se, and that of the check fraud is against the making of a document having validity other than the fact that the funds against which it is drawn are "insufficient." The check fraud statute concerns a "genuine" instrument although not collectible. The forgery statute concerns an instrument which is not genuine.

*Capwell v. State* involved a situation not here present. In *Capwell,* we held the attempt of sexual assault could be properly charged only under the statute specifically dealing with attempted sexual assault and not under the general attempt statute. The latter carried a greater penalty. Nor is the other case relied upon by appellant of support to his position. In *McArtor v. State,* we recognized that a special statute would govern where a general statute is inconsistent with a special statute pertaining to the same subject matter, but we also pointed out that, in that case, the legislative intent was to address different conditions in the two statutes. We said that:

> " * * * Both statutes involve sexual activity, but they are not mutually exclusive. It is not uncommon for two valid statutes to prohibit the same type of conduct, or for the prosecutor to decide under which statute to charge a defendant. [Citations.]" *McArtor v. State,* 699 P.2d at 293–294.

So it is here. Both statutes involve fraudulent documents, but one (check fraud) primarily concerns the element of insufficient funds in the bank upon which the check is drawn. The other (forgery) primarily concerns the element of fabrication or falsity of the instrument itself.

Appellant attempted to pass a check which was not genuine. It was signed by him under a fictitious name and was on a bank in which appellant did not have an account and in which there was no account under the fictitious name. Appellant was properly charged.

Affirmed.