Robert W. DESPAIN, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).  (Two Cases)

Nos. 88–172, 88–196.

Supreme Court of Wyoming.

May 5, 1989.

Leonard D. Munker, State Public Defender, Steven E. Weerts, Sr. Asst. Public Defender, and Tom Quinn, Student Intern, WDAP, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Sylvia Lee Hackl, Sr. Asst. Atty. Gen., and Sh- Batzer, Student Intern, for appell

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and GRANT, District Judge.

URBIGKIT, Justice.

These two sequential criminal convictions present three questions considering rights to a speedy trial: time from arrest to date of trial (delay in prosecution); time from filing of information to date of trial (delay in district court trial); and delay in sentence after entry of a guilty plea (delay in sentencing).

We affirm, finding no error of procedural or constitutional dimension.

On April 6, 1987, with more than five years served on a 1982, ten-to-twenty year aggravated robbery sentence, appellant Robert W. DeSpain (DeSpain) was classified to a "trustee" position and transferred from the Wyoming State Penitentiary in Rawlins, Wyoming to the Wyoming State Honor Farm in Riverton, Wyoming. A month and a half later, in the company of other prisoners, he walked away at night for a visit to town and its available bars, returning voluntarily before morning. He had taken a midnight furlough, in colloquial terms. Unfortunately, one of the other prisoners who also returned, apparently brought back intoxicating beverages into the confinement facility. Thus, DeSpain was arrested for the offense of escape from official detention, W.S. 6–5–206(a)(i), for which he was charged in county court, waived preliminary hearing, arraigned July 15, 1987 in district court, and first entered a plea of not guilty. On September 2, 1987, he changed his plea to nolo contendere. A pre-sentence investigation report was ordered, which was completed and filed with the court on February 16, 1988. Two changes in counsel occurred and on April 25, 1988, a sentence hearing was held in which DeSpain was given a penitentiary sentence consecutive to the incomplete term on the prior offense with a new sentence of one and a half to three years. Appeal from that sentence is taken. Short-

ly after entry of the nolo plea, DeSpain was returned to the Wyoming State Penitentiary to resume serving the 1982 incomplete penitentiary sentence.[1]

The issue for his first appeal is embraced in a constitutional deprivation of a right to a speedy sentence as an aspect of a speedy trial requirement found in both state and federal constitutions. The cause for delay in sentencing is intrinsic to the other charges which, following trial conviction, are also presented in the second appeal based on his complaint of a denied speedy trial.

Two days after his entry of the nolo plea to the Honor Farm escape charge, DeSpain, on September 4, 1987, in conjunction with another prisoner, really did try to escape from the Fremont County jail in Lander, Wyoming. This planned, but unsuccessful nighttime effort involved an assault on two jailers with a razor blade melted into the end of a toothbrush. Subsequently, DeSpain was charged with escape, aggravated assault, and manufacture of a deadly weapon with intent to inflict bodily harm. The initiation of these criminal charges occurred by completion of a criminal complaint and warrant dated September 28, 1987 which was processed by service upon him at the Wyoming State Penitentiary on October 21, 1987. After waiver of a preliminary hearing on December 15, 1987, DeSpain was initially scheduled for arraignment in district court on January 13, 1988, which session was delayed by weather, and then completed on January 20, 1988. He entered pleas of not guilty on all the charges arising from the Fremont County jail break. Trial was scheduled for March 21, 1988 and then continued by the district court to be held on April 26, 1988 because of a scheduling conflict for the prosecuting attorney who was subpoenaed to appear as a witness in federal court. Additionally, DeSpain's first appointed counsel withdrew at the end of December and other counsel from the staff of the

---

1. Technically, on September 15, 1987, DeSpain was "released O.R." (on his own recognizance) for the escape offense so that he would be taken back to the penitentiary where more suitable security was available.

public defender's office was subsequently appointed for him.

In early March 1988, a pretrial conference was held with the accused in attendance to settle arrangements for a scheduled March trial. Later, on March 16, 1988, following the issuance of the subpoena of the prosecuting attorney, the trial date was rescheduled with the concurrence of defense counsel. The trial itself was scheduled in conjunction with a hearing on various motions which had been made by DeSpain on the second offense arising from the Fremont County jail escape and motion attacking contended delay in first offense, Honor Farm, sentencing. The two-day April trial resulted in a jury verdict of convictions on the attempted escape and aggravated assault charges and acquittal on the manufacture of a deadly weapon charge. As a result, DeSpain was further sentenced to terms of eight-to-ten years on attempted escape and eight-to-ten years on aggravated assault, consecutive to each other and consecutive to all other sentences which included both the prior escape sentence and the still incomplete 1982 sentence from which the initial escape had occurred. Appeal from this second offense sentencing was also taken presenting issues generally of speedy trial from date of arrest to date of trial and speedy trial from filing of the information in the district court to the date of trial—the 120–day rule under Rule 204, Uniform Rules for the District Courts of the State of Wyoming.

If some particularized concept for this case deserves recognition, it is that DeSpain's history justified care in his transfer from Rawlins to Lander for hearings and trial. Age twenty-six at the time of sentencing, continuing to serve a ten-to-twenty year sentence for the 1982 Gillette aggravated robbery, and faced with the present two charges of escape, with the second complicated by use of weapons and aggra-

vated assault on the jailers, DeSpain had violated probation in 1976 and had also committed another escape in 1979. In 1981, after second parole in Oregon, he was given a three year probation for a sentence for burglary in Montana and then, in violation of that responsibility, was sentenced in Gillette, Wyoming in 1982 for the most recent offense, aggravated robbery. Officers at the penitentiary were entitled to flexibility in arranging travel schedules for appearance in Lander in consideration of this unappealing confinement record. Justification for delay in appearance caused by weather and road conditions was clearly appropriate. *Campbell v. State*, 26 Ark. App. 133, 761 S.W.2d 613 (1988). Factually, these appeals are also confined by the absence of any reliable guilt defenses and that continued confinement was on the prior sentence leaving DeSpain no opportunity to commence serving the more current sentences.

## SPEEDY SENTENCING

This first inquiry addresses whether the district court should have required the penitentiary staff to return or the county sheriff's office to go get DeSpain for sentencing at an earlier date following receipt of the presentence investigation report in mid-February. We do not find justification for that requirement to avoid violation of the Wyoming timely sentence rule.[2]

Actually, at the time of the March 2, 1988 conference held with DeSpain in attendance, no one anticipated the postponement later engendered by the federal court conflict for the prosecuting attorney. When the mid-March telephone conference session of the district court and counsel was held to discuss continuance, a May date was first anticipated, but openings in the district court schedule permitted the earlier setting of April.[3]

2. W.R.Cr.P. 33(a)(1) provides in part: "Sentence shall be imposed without unreasonable delay."

3. DeSpain's chronology for these appeals include the following:

TIME LINE OF EVENTS

| DATE | CASE NO. 88–172 (Honor Farm—No. 4488) | CASE NO. 88–196 (County Jail—No. 4536) |
| --- | --- | --- |
| 5/22/87 | escape from Honor Farm | |
| 6/3/87 | complaint filed | |

A speedy sentencing review appears for first impression in this court. All prior Wyoming cases involved the more defined subject of speedy trials. The one analysis of this subject by the United States Supreme Court is found in *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed. 2d 393 (1957), where that court, in consideration of F.R.Cr.P. 32(a), utilized a constitutional speedy trial thesis for this issue ex-

| DATE | CASE NO. 88–172 | CASE NO. 88–196 |
|---|---|---|
| 6/9/87 | counsel appointed; preliminary hearing set for 6/12/87 | |
| 6/19/87 | waives preliminary hearing | |
| 6/23/87 | bound over to district court | |
| 6/25/87 | information filed | |
| 7/15/87 | pleads not guilty; trial set for 9/14/87 | |
| 8/19/87 | files motion to change plea | |
| 9/2/87 | now pleads nolo contendere; court orders update to presentence report | |
| 9/4/87 | | attempts to escape from county jail |
| 9/15/87 | released on O.R. and returned to penitentiary | |
| 9/28/87 | | complaint filed |
| 10/21/89 | | served with complaint; |
| 11/30/87 | | initial appearance; counsel appointed |
| 12/13/87 | | asks counsel to withdraw from case |
| 12/14/87 | | information filed |
| 12/15/87 | | preliminary waived |
| 12/23/87 | | files pro se motion for additional time before preliminary hearing |
| 1/8/88 | moves to dismiss charges | |
| 1/11/88 | | moves to dismiss charges and to delay proceedings |
| 1/12/88 | | arraignment continued |
| 1/20/88 | | arraignment held; trial set for 3/21/88; motion to dismiss denied |
| 1/25/88 | counsel moves to withdraw | |
| 1/25/88 | court permits counsel to withdraw | |
| 2/8/88 | | moves to dismiss |
| 2/16/88 | presentence report received by court | |
| 2/19/88 | | motion to withdraw granted; new counsel appointed |
| 2/24/88 | court permits second counsel to withdraw; public defender appointed; sentencing set for 3/23/88 | |
| 3/2/88 | | pretrial conference held; court denies motion to dismiss |
| 3/16/88 | | conference call; state request for continuance granted with defense concurrence |
| 3/23/88 | court continues sentencing to 4/25/88 | |
| 3/25/88 | moves to dismiss | |
| 3/29/88 | court sets hearing on motion to dismiss for 4/25/88 | |
| 4/18/88 | | counsel files motion to dismiss |
| 4/25/88 | court denies motion; sentences appellant | |
| 4/27/88 | | guilty verdict rendered; sentence orally given then typed and filed on 6/20/88 |

amination. In identical fashion to F.R.Cr. P. 32(a), W.R.Cr.P. 33(a)(1) provides that "[s]entence shall be imposed without unreasonable delay." Rule 204, by express terminology, applies only to trial and the stated time period is unrelated to any period after trial during which normally the presentence investigation report is obtained before sentence is imposed. Observedly, the trial judge in the Wyoming criminal law system has minimal or no control over the time required for the completion of that report which is prepared by the Probation and Parole Department, an executive branch agency.

The United States Supreme Court addressed the speedy sentence concern in *Pollard*, 352 U.S. at 361, 77 S.Ct. at 485–86 assumptively:

Petitioner's other contentions relate to violations of constitutional rights of speedy trial and due process, and significant departure from proper standards of criminal law administration. It is not disputed that a court has power to enter sentence at a succeeding term where a void sentence had been previously imposed. *Miller v. Aderhold,* 288 U.S. 206 [53 S.Ct. 325, 77 L.Ed. 702 (1933)]; cf. *Bozza v. United States,* 330 U.S. 160, 166 [67 S.Ct. 645, 648, 91 L.Ed. 818 (1947)]. To hold otherwise would allow the guilty to escape punishment through a legal accident.

Petitioner argues that the 1954 sentence violated his right under the Sixth Amendment of the Constitution to a "speedy" trial. He takes this position on the assumption that the case remained, as we have held above, uncompleted after the 1952 trial. We will assume *arguendo* that sentence is part of the trial for purposes of the Sixth Amendment. The time for sentence is of course not at the will of the judge. Rule 32(a) of the Federal Rules of Criminal Procedure requires the imposition of sentence "without unreasonable delay."

Whether delay in completing a prosecution such as here occurred amounts to an unconstitutional deprivation of rights depends upon the circumstances. [Footnote omitted and emphasis in original.]

An ambivalence among the courts has developed as to the theory upon which the validity of delayed sentencing is tested. Three defined approaches exist and, in some cases, two or more of the approaches may be utilized for analysis in the same case. Apparently, the subject of delayed sentencing has broader facets and less defined parameters than does the speedy trial concepts.

This precept was distinctively analyzed by the Court of Appeals of New York in recognizing:

There are perceptible distinctions, however, between speedy trial concepts and the requirement of timely sentencing. Speedy trial requirements focus upon the need for a prompt trial so that witnesses are available, possible exoneration is swift and the public's interest in deliberate prosecution is fulfilled. After a defendant is convicted, the focus shifts to the defendant's right to appeal, his eligibility for pardon and commutation of sentence, and, if a retrial becomes necessary, the danger that witnesses may be unavailable. Of equal significance in the need for timely sentencing is the public perception that prompt and certain punishment has been imposed upon a defendant found guilty, uninfluenced by legally irrelevant considerations. Thus, we have rested our rule requiring prompt sentencing on broader grounds, inferring that delay inevitably results in prejudice to the defendant.

*People v. Drake,* 61 N.Y.2d 359, 474 N.Y. S.2d 276, 462 N.E.2d 376, 379 (1984).

The first approach, sometimes buttressed by statutes or rules, is an evaluation of a Sixth Amendment of the United States Constitution and state constitutional right to a speedy trial where the concept is found to include post-guilt determinations in the entry of a sentence. *United States v. Reese,* 568 F.2d 1246 (6th Cir.1977); *United States v. Campbell,* 531 F.2d 1333 (5th Cir.1976), cert. denied, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 121 (1977); *Juarez–Casares v. United States,* 496 F.2d 190 (5th Cir.1974); *United States v. Tortorello,* 391

F.2d 587 (2nd Cir.1968); *Gonzales v. State,* 582 P.2d 630 (Alaska 1978).

A second thesis, differently phrased and often in specific rejection of a Sixth Amendment speedy trial concept, is presented by examining the right as a due process and Fourteenth Amendment of the United States Constitution analysis. These cases end the Sixth Amendment speedy trial requirement at the date of trial and then invoke the due process clause of the Fourteenth Amendment to question the validity of a sentence imposed after an inordinate passage of time. *State v. Duncan,* 396 So.2d 297 (La.1981); *State v. Johnson,* 363 So.2d 458 (La.1978); *State v. Milson,* 458 So.2d 1037 (La.App.1984); *Erbe v. State,* 25 Md.App. 375, 336 A.2d 129 (1975); *Jackson v. Page,* 411 P.2d 555 (Okla.), cert. denied, 385 U.S. 854, 87 S.Ct. 101, 17 L.Ed. 2d 82 (1966). But see *Lee v. State,* 487 So.2d 1202 (Fla.App.1986); *State v. Drake,* 259 N.W.2d 862 (Ia.1977); and *Erbe v. State,* 276 Md. 541, 350 A.2d 640 (1976), multifaceted approach.

The third theory of an older history essentially presents in non-constitutional terms an analysis of a total loss of jurisdiction by the district court to sentence if improperly delayed. Within the scope of these cases, the conviction is valid but no sentence can be imposed. This concept was first noted in the early Michigan case of *People v. Reilly,* 53 Mich. 260, 18 N.W. 849 (1884) and dispositively applied in *People v. Turner,* 92 Mich.App. 485, 285 N.W. 2d 340 (1979). A similar approach was taken in *Zerbst v. Nahas,* 67 F.2d 742 (10th Cir.1933); *Grundel v. People,* 33 Colo. 191, 79 P. 1022 (1905); *People v. Jones,* 4 Ill. App.3d 907, 282 N.E.2d 248 (1972); *State ex rel. Dawson v. Sapp,* 87 Kan. 740, 125 P. 78 (1912); *City of Baton Rouge v. Bourgeois,* 380 So.2d 63 (La.1980); and *Browning v. Oklahoma City,* 503 P.2d 241 (Okla. 1972). Cf. *Miller v. Aderhold,* 288 U.S. 206, 53 S.Ct. 325, 77 L.Ed. 702 (1933).

■ A fourth approach, which is the one we adopt for this case, declines to apply a single theory because there was no unreasonable sentencing delay. This principle is stated in *Brooks v. United States,* 423 F.2d

1149, 1151 (8th Cir.), cert. denied, 400 U.S. 872, 91 S.Ct. 109, 27 L.Ed.2d 111 (1970) (citing *Pollard,* 352 U.S. 354, 77 S.Ct. 481):

It is unnecessary for us to make a decision at this time as to whether an unreasonable delay in sentencing constitutes an infringement of a jurisdictional or constitutional right. We hold that there has not been, under constitutional standards, any "purposeful" or "oppressive" delay in this particular case.

The comprehensive analysis in *Erbe,* 350 A.2d 640 follows a similar approach to issue resolution. The same analytical approach was found in *State v. Cunningham,* 405 A.2d 706, 716 (Del.Super.1979), although reversed and remanded on other grounds, 414 A.2d 822 (Del.1980):

A holding that the speedy trial guarantees of Article I, Section 7 of the Delaware Constitution and the 6th Amendment of the U.S. Constitution encompass the right to speedy sentence is not necessary to sustain the result here. As defendant points out, an unreasonable delay in sentencing is a violation of due process, for "justice delayed is justice denied." * * * The "without unreasonable delay" provision of Criminal Rule 32(a) implements this constitutional standard. Thus, regardless of the application of the speedy trial right, a delay in sentencing which is unreasonable violates the Rule and deprives the defendant of due process of law.

■ Within the factual analysis of this case, undue delay did not occur, see *United States v. Pruitt,* 341 F.2d 700 (4th Cir. 1965), and no harm, damage, disadvantage or prejudice was shown from the time the presentence investigation report was available to the date that sentence was pronounced. Consequently, this court will decline at this time to adopt or exclude any of the theories as to speedy sentencing. Furthermore, time factors evidenced here cannot be compared to extended delay cases where remedial action was justified. See *Drake,* 259 N.W.2d 862; *Bourgeois,* 380 So.2d 63; *Milson,* 458 So.2d 1037, four and one-half years; and *Erbe,* 350 A.2d 640.

In practical consideration of the operation of the justice delivery system, we find no cause to relieve DeSpain here. Obviously, under Wyoming law, the district court did not lose jurisdiction during the sentence pending period. No unrealistic or unreasonable time had elapsed in the nature of the theory for loss of jurisdiction. No due process disaffinity is discerned, and lacking application of Rule 204 to this sentencing inquiry, the structure of delay realistically presents no challenge to violation of a constitutional speedy trial right.[4] We recognize that principles of fundamental fairness dictated by the due process clause of the Fourteenth Amendment prohibit inordinate delay in post-conviction proceedings such as sentencing, *Cunningham*, 405 A.2d 706; *Duncan*, 396 So.2d 297; *Browning*, 503 P.2d 241; as a concept confirmed by our rule, W.R.Cr.P. 33(a). Cf. *Juarez–Casares*, 496 F.2d 190. We find nothing here to evidence either a constitutional or rule violation. Expeditious disposition under the practical circumstances constitutes suitable responsiveness to speedy sentencing. *Reese*, 568 F.2d 1246; *Brooks*, 423 F.2d 1149. Cf. *Gonzales*, 582 P.2d 630. Thus, finding no violation of a speedy sentence right, DeSpain's first sentence for escape is affirmed.

## SPEEDY TRIAL

DeSpain presents two differentiated complaints in discussing his appellate issue of speedy trial from the convictions following the attempted Fremont County jail break. He first attacks the time from arrest to trial, which he tries to extend not from the pro forma arrest at the penitentiary, but from the time that the unsuccessful jail break was ended with his re-confinement in security. Thereafter, he complains of delay in return from the penitentiary to Fremont County for the setting of a bond and a preliminary hearing. Second, he contests

the time which occurred after an information was filed in district court until the trial itself was conducted. His last contention of violated speedy trial is constructed within Rule 204, which provides:

(a) It is the responsibility of court and counsel to insure to each person charged with crime a speedy trial.

(b) A criminal charge shall be brought to trial within 120 days following the filing of information or indictment.

(c) The following periods shall be excluded in computing the time for trial:

(1) All proceedings related to the mental illness or deficiency of the defendant.

(2) Proceedings on another charge.

(3) Delay granted by the court pursuant to Section (d).

(4) The time between the dismissal and the refiling of the same charge.

(5) Delay occasioned by defendant's change of counsel or application therefor.

(d) Continuances may be granted as follows:

(1) On motion of defendant supported by affidavit of defendant and defendant's counsel.

(2) On motion of the prosecuting attorney or the court if:

(i) The defendant expressly consents; or

(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced.

(e) Upon receiving notice of possible delay the defendant shall show in writing how the delay may prejudice his defense.

(f) If the defendant is unavailable for any proceeding at which his presence is

4. The State premises speedy sentence arguments on a *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ad hoc balancing test. This is the constitutional speedy trial application, and the State's discussion does not separately analyze cases within the different principles which are used by different courts.

DeSpain likewise cites the usual cases which apply *Pollard*, 352 U.S. 354, 77 S.Ct. 481 for a speedy sentencing concept and gains authority from the more confined subject of speedy sentence references where jurisdiction becomes questioned.

required, the time period shall begin anew upon defendant's being available.

■ DeSpain's argument is intermixed since Rule 204 only applies to proceedings in district court, although the rule is cited in his brief as authority for contesting delay from the time that he could have been arrested for the offense to the time when he was bound over by the district court for appearance and arraignment before the district judge. Our precedent in *Caton v. State*, 709 P.2d 1260 (Wyo.1985) and the text of Rule 204 itself, make clear that the time parameters apply only to the actions of the district court following the time from felony information to the date of trial. The distinction between pre-indictment delay and post-indictment delay results from the interpretation of the Sixth Amendment by the United States Supreme Court in holding that the pre-indictment delay is irrelevant to application of the Sixth Amendment. Only indictment, information filing or restraint arrest triggers its application. *State v. Bartnes*, 764 P.2d 1271 (Mont. 1988). Any pre-charging delay is only to be tested by a Fourteenth Amendment review. *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Sherlock*, 865 F.2d 1069 (9th Cir.1989); *Ross v. United States*, 349 F.2d 210 (D.C.Cir.1965); *State v. Howard*, 52 Wash.App. 12, 756 P.2d 1324 (1988), review denied 3/7/89; Feulner, *Pre–Arrest Delays and the Right to Speedy Arrest: Apologia Pro Vita Ross*, 11 Ariz.L.Rev. 770 (1969); Note, *Pre–Arrest Delay: Evolving Due–Process Standards*, 43 N.Y.U.L.Rev. 722 (1968); Project, *Fourteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1983–1984*, 73 Geo. L.J. 249, 507 (1984); Project, *Thirteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1982–1983*, 72 Geo. L.J. 249, 457 (1983).

■ Considering that DeSpain was serving his sentence for a disassociated offense, the time line of events seems neither oppressive nor extraordinary. On September 4, 1987, the attempted escape occurred.

Apparently almost immediately, DeSpain was returned to the penitentiary and, within that month, the criminal complaint was filed. Whatever may have been his circumstance during that period in considering either that he was being held for sentencing on the first escape from the Honor Farm or for service on the prior 1982 term of incarceration, he was not being held for trial on the Fremont County jail escape as a third confinement causing event. *State v. L'Italien*, 363 N.W.2d 490 (Minn.App. 1985), review denied 3/26/85.

Nothing in the record reflects a reason why the complaint and warrant were not served at the penitentiary until October 21, 1987, but likely it was in accord with scheduling arrangements for return to Fremont County since, on November 30, 1987, he was brought back to appear in county court to set an appearance bond and complete arrangements for a preliminary hearing. If we were to derive any concern about the delay in time from the penitentiary arrest to the preliminary hearing scheduled in county court in Riverton, it would realistically be absolved by his execution of a waiver of preliminary hearing which occurred on December 15, 1987 concurrently with his request of two days earlier that his appointed counsel withdraw. A consideration of the totality of the circumstances for a due process review, including continued incarceration for a prior offense, travel requirements, seasonal weather and appearance scheduling, reveals no due process violation of the constitutional test in pre-arraignment, arrest and first court appearance. *Heinrich v. State*, 638 P.2d 641 (Wyo.1981); *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, reh'g denied, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); Note, supra, 43 N.Y.U.L.Rev. 722. Cf. *Cherniwchan v. State*, 594 P.2d 464 (Wyo.1979). In these cases, pre-charging delay is tested by a due process, Fourteenth Amendment analysis; arrest initiates the Sixth Amendment and the Wyo. Const. art. 1, § 10 inquiry and filing in district court then appropriates the justifi-

cation and limitation of Rule 204 as a basic 120–day criteria for speedy trial.

Reasonableness of time and occurrence are related to the incarceration in the state penitentiary and consequent requirement to move DeSpain back to Fremont County for initial appearance in county court, preliminary hearing, if held, arraignment in district court, and finally trial. Although the information was filed in the district court prematurely, the record for the county court demonstrates appearance and waiver of preliminary hearing were delayed by counsel withdrawal at the request of DeSpain. Early arrangement for arraignment was then scheduled and we find nothing in the events from the date of issuance of the arrest warrant, September 28, 1987; its exercise, November 30, 1987 by service of the warrant; appearance in county court, November 30, 1987 in Riverton, Wyoming; waiver of preliminary hearing, December 15, 1987; or initial scheduled arraignment in district court for January 13, 1988, as rescheduled and held January 20, 1988; that provide any support for DeSpain's pre-arraignment speedy trial constitutional attack. For the pre-arrest due process inquiry through events to district court arraignment which initiate the Sixth Amendment and Wyo. Const. art. 1, § 10, speedy trial evaluation, undue delay is not demonstrable. *Phillips v. State*, 597 P.2d 456 (Wyo.1979); *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed. 2d 205 (1975); *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

■ Nor do we find DeSpain's arguments improved in adding the claim of delay in conjunction with Rule 204. It does not really change the context of the occurrence whether the initiation date for computation starts with the premature date of filing the district court information, December 14, 1987, or the date that an order was entered by the county court and filed with the district court binding DeSpain over to stand trial on December 28, 1987. An order for arraignment was signed on January 7, 1988, for a January 13, 1988 arraignment, which was thereafter postponed for seven days by request of personnel from the penitentiary because road conditions were unsuitable for driving DeSpain to Fremont County. See *Campbell*, 761 S.W.2d 613. Immediately after arraignment, January 20, 1988, trial was scheduled for March 21, 1988, which was clearly within the Rule 204 period of 120 days after the start of any period of district court jurisdiction. There are two definitive bases for rejection of the attack on trial delay from March to April without necessity for exhaustive weighing of Rule 204 against the standards of federal constitutional criteria. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and its multitude of progeny.[5] *State v. Wheaton*, 528 A.2d 1109 (R.I.1987); *Topical Surveys*, 22 Suffolk U.L.Rev. 431, 451 (1988). See also McCabe, *Four Faces of State Constitutional Separation of Powers: Challenges to Speedy Trial and Speedy Disposition Provisions*, 62 Temp.L.Rev. 177 (1989).

First, the subpoena of the prosecutor was proper cause for a reasonable continuance of the trial date, at the discretion of the trial judge in administration of the justice delivery system. Rule 204(d)(2)(iii). Furthermore, agreement by DeSpain's attorney for the continuance constitutes waiver for this additional time for any speedy trial complaint as an event that falls within the criteria of Rule 204(e). *Smith v. State*, 482 So.2d 521 (Fla.App. 1986); *State v. Jones*, 310 N.C. 716, 314 S.E.2d 529 (1984). Acceptable continuances for a reasonable time for convenience of counsel are appropriate to extend the speedy trial time limitations within the continued responsibility of the trial court. Cf. *Hurst v. State*, 563 P.2d 232 (Wyo.1977); *Williams v. State*, 533 N.E.2d 1193 (Ind. 1989); and *State v. Black Feather*, 266 N.W.2d 563 (S.D.1978). To establish that this postponement of trial constituted a speedy trial violation, the defendant must meet a burden of demonstrating that the

---

**5.** Approximately 2,971 cases can be found in federal and state courts where Barker has, in some fashion, been cited.

trial court's decision to approve the rescheduled date was either an abuse of discretion or a lack of good cause as a matter of law. *State v. Toney,* 315 Md. 122, 553 A.2d 696, 704 (1989). DeSpain did not meet this burden.

Consequently, we find that the schedule which was followed is completely in compliance with the court rule for a speedy trial. Having met this schedule, the constitutional requirements have also presumptively been met, *Caton,* 709 P.2d 1260, in absence of proven prejudice, which is clearly not shown. Finding compliance with the rule and by determination that the district court established a sufficiently limiting time schedule, no comprehensive inquiry in constitutional design such as has been pursued in this court's earlier decisions and as addressed by the United States Supreme Court in *Barker,* 407 U.S. 514, 92 S.Ct. 2182, and a large number of other current decisions, is required. See *Estrada v. State,* 611 P.2d 850 (Wyo.1980). Application of balancing factors becomes necessary only if a sufficient delay requiring factual explanation first exists. *Tageant v. State,* 683 P.2d 667 (Wyo.1984); *Wheaton,* 528 A.2d 1109. Cf. *State v. Carisio,* 552 A.2d 23 (Me.1988), sixteen months delay gives rise to a presumption that such a delay is unnecessary.

In conclusion, we determine that (1) an undue delay in sentencing on the first escape from the Honor Farm is not demonstrable under these circumstances; (2) time between the commission of the second offense arising from the attempted Fremont County jail escape and the date of actual arrest is not countable on any Sixth Amendment speedy trial inquiry and no equal protection or due process impedance has been demonstrated by DeSpain; (3) the time from arrest to trial is not sufficiently extended to even create the presumption of delay requiring substantive exploration; and (4) the schedule followed was fairly and completely within the time limitations of Rule 204, which provides a rebuttable presumption of constitutional compliance in absence of extraordinary demonstrable prejudice which was, in this situation of continued service of an earlier sentence and subsequent consecutive sentence, clearly not proven.

Consequently, both convictions and resulting sentences are affirmed.

GOLDEN, J., filed a special concurrence with which THOMAS, J. and GRANT, District Judge, joined.

GOLDEN, Justice, specially concurring, in which THOMAS, Justice, and GRANT, District Judge, join.

I agree with that portion of the majority opinion entitled "Speedy Sentencing" and with the result achieved in that part of the majority opinion entitled "Speedy Trial." With reference to this latter part of the opinion, however, I do not agree that this court's speedy trial analysis is, or should be, based upon "the justification and limitation of Rule 204, Uniform Rules for the District Courts, as a basic 120–day criteria for speedy trial."

In 1972, this court expressly adopted the four-part balancing test established, explained and applied in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See *Cosco v. State,* 503 P.2d 1403, 1405 (Wyo.1972). Again, in 1979, this court faithfully applied the balancing test in *Cherniwchan v. State,* 594 P.2d 464 (Wyo. 1979), where the court found the defendant had been wronged by excessive delay *but not wronged in a constitutional sense.* A year later this court once more faithfully applied the balancing test in *Estrada v. State,* 611 P.2d 850 (Wyo.1980). Again, in 1981, in *Robinson v. State,* 627 P.2d 168 (Wyo.1981), this court applied the balancing test "previously adopted in this jurisdiction as the means by which a speedy trial claim should be judged." Id. at 171. Significantly, the court observed that on September 14, 1979, the Wyoming Judicial Conference adopted Rule 22, the forerunner of present Rule 204. Although *Estrada* was decided *after* the adoption of the rule, the rule "was not an issue in that case and was not considered by this court in the decision." *Robinson,* 627 P.2d at 171. In *Robinson* the criminal defendant specifically asserted that his denial of speedy trial was in viola-

tion of Rule 22. This court rejected that assertion and the application of the rule's absolute deadline. Id. at 172. In particular, this court said:

This court does not approve or disapprove district court rules * * *. The adoption of Rule 22 by the Judicial Conference was obviously to set guidelines to encourage and motivate prompt disposition of criminal cases and to avoid a constitutional violation with respect to speedy trial requirements * * *. *[N]o sanction of dismissal is provided by the rule.* To so provide would have caused it to be inconsistent with Rule 45(b), W.R.Cr.P. by defining "unnecessary," which this court has decided must be determined on a case-to-case basis following standards and the tests set out in *Estrada.* Its adoption was accordingly admirable but *the fixing of an absolute deadline by Rule 22(d), Uniform Rules for the District Courts of the State of Wyoming was in conflict with, superseded and modified by Estrada.*

Id. at 171–72 (emphasis added).

A few months after *Robinson,* this court considered another speedy trial claim invoking Rule 22 in *Cook v. State,* 631 P.2d 5, 9 (Wyo.1981). In that case, the criminal defendant contended that Rule 22 provided the exclusive and mandatory guidance for a speedy-trial action. Rejecting that argument, this court again expressly rejected the strict application of Rule 22's time limitations and embraced the balancing test from *Barker.* Id. at 10.

This court continued to apply faithfully the balancing test in *Sodergren v. State,* 715 P.2d 170 (Wyo.1986); *Binger v. State,* 712 P.2d 349 (Wyo.1986); *Caton v. State,* 709 P.2d 1260 (Wyo.1985); *Tageant v. State,* 683 P.2d 667 (Wyo.1984); *Grable v. State,* 649 P.2d 663 (Wyo.1982); *Heinrich v. State,* 638 P.2d 641 (Wyo.1981).

Curiously and unexplainably, the majority opinion says nothing about the two most recent cases decided by this court in which the balancing test was applied. I refer to *Harvey v. State,* 774 P.2d 87 (Wyo.1989) and *Phillips v. State,* 774 P.2d 118 (Wyo. 1989). Although these two most recent applications of the balancing test drew two dissents, at least the court applied the bal-

ancing test and did not abandon it outright in favor of the earlier rejected strict time limitations of present Rule 204.

If a majority of this court wants to modify a straightforward application of the *Barker* balancing test by making Uniform District Court Rule 204 mandatory in a constitutional sense, it should expressly overrule a long line of cases including *Caton, Robinson* and *Cook* and say so. Otherwise, this court's analysis of speedy trial cases has been muddled to impliedly justify what seems to be a plurality opinion in *Phillips* and *Harvey.* Sound jurisprudence requires that we clearly enunciate controlling law. Previous majority opinions of this court which conflict with a newer position should be overruled rather than overwhelmed. See B. Witkin, Manual On Appellate Court Opinions § 101 at 195 (1977) (referencing *Bennett v. Superior Court,* 218 Cal. 153, 165, 21 P.2d 946, 950 (1933) (Zangdon, J., specially concurring)). I suspect that the votes to expressly overrule *Caton, Robinson* and *Cook* in this case simply do not exist.

I specially concur, therefore, in the "speedy trial" portion of this opinion because, under the well-established and often-applied balancing test which is the law of this jurisdiction, no speedy trial violation occurred.